**INRYCO, INC., Plaintiff-Appellee,**

v.

**METROPOLITAN ENGINEERING COM-
PANY, INC., and American Fidelity Fire
Insurance Company, Defendants-Appel-
lants.**

Nos. 82–1790, 82–2166.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 7, 1983.

Decided May 23, 1983.

Dale R. Crider, Rivkin, Leff, Sherman & Radler, Chicago, Ill., for defendants-appellants.

Leonard S. Shifflett, Wilson & McIlvaine, Chicago, Ill., for plaintiff-appellee.

Before BAUER and COFFEY, Circuit Judges, and HOLDER, District Judge.*

BAUER, Circuit Judge.

The district court entered a judgment of default against the defendants in the amount of $225,316.93. The defendants argue that the default judgment should have been vacated pursuant to Federal Rule of Civil Procedure 60(b), and appeal from denial of that motion.

The district court entered its judgment of default on December 4, 1981. On February 10, 1982, the defendants filed their Rule 60(b) motion to vacate entry of default, which the district court denied on April 13, 1982. The defendants within ten days filed a Rule 59(e) motion to alter or amend that ruling. Because the plaintiff raised objections to the propriety of the Rule 59(e) motion, the defendants filed a notice of appeal from the Rule 60(b) judgment while the Rule 59(e) motion was pending. This court stayed proceedings in that appeal pending resolution of the defendants' motion to alter or amend.

The district court on June 18, 1982, denied the motion to alter or amend; a second notice of appeal was filed in this court on July 16, 1982. We affirm.

## I. FACTS

The procedural history of this case is lengthy, but a review is needed to understand why the district court entered the default judgment. Most of the events set out below were chronicled in the district court's memorandum order denying the motion to vacate. The defendants dispute some of the facts.

### A. Events leading to default judgment.

Plaintiff Inryco, Inc., sued Defendants Metropolitan Engineering Company (MECO) and American Fidelity Fire Insurance Company, MECO's surety, for breach of contract. Inryco had contracted with the University of Illinois to build a parking garage at that university's Chicago campus. Inryco subcontracted part of the work to MECO. In its complaint, Inryco claimed that MECO breached the subcontract by failing either to complete the work or to pay its vendors, forcing Inryco to hire another subcontractor to finish the job. Inryco also sought performance on the subcontractor bond from American Fidelity.

The defendants were personally served with process and copies of the complaint in May 1980. Shortly thereafter, Inryco filed interrogatories and production requests.

On June 17, 1980, the defendants, through their retained counsel Thomas J. Royce, moved for a stay of the proceedings pending arbitration. Royce, however, did not file an appearance and the defendants did not answer the complaint. The district court set a briefing schedule on the motion to stay.

Inryco was granted leave to file an amended complaint on July 17. The district court ordered the defendants to answer or otherwise plead by August 6. No such pleading was filed.

On August 22, the district court, under 9 U.S.C. § 3 (1947), granted the defendants' motion to stay the proceeding pending arbitration. Neither Royce nor any other person appeared to represent the defendants.

On its own motion, the district court on October 29 set the case for a status hearing on December 12. The defendants were not represented at that status hearing. The court conducted four additional status hearings on January 26, February 27, April 10, and May 8, 1981. The defendants did not appear at any of the hearings.

On May 15, 1981, Inryco filed a motion to lift the stay of proceedings. Although the motion was personally served on Royce at his office, Royce did not appear in court when the motion was called, and did not file any written objection or response to the motion. The court granted the motion.

* The Honorable Cale J. Holder, United States District Court for the Southern District of Indiana, is sitting by designation.

Inryco then served Royce with the interrogatories and requests to produce that were filed originally a year before. Additionally, Inryco filed notices of depositions. Responses to these pleadings were due by June 15. On June 19, when no responses were forthcoming, Inryco's counsel telephoned Royce to request discovery compliance. Royce promised a quick reply. Nevertheless, the discovery request remained unanswered until July 6, when Inryco's counsel again telephoned Royce. This time, Royce promised satisfaction by July 20, and the parties rescheduled a deposition of James Dooley, president of MECO, for July 28. When Royce did not respond on July 20, Inryco's counsel called Royce to request compliance. Royce said that the defendants refused to comply with the onerous requests. Notably, Royce never filed objections to the discovery requests with the court.

On August 21, Inryco filed a motion for sanctions under Federal Rule of Civil Procedure 37(d). This time, Royce responded immediately, filing a response stating that the defendants would answer all interrogatories by September 25. In court Royce said that his clients would send all requested documents to Royce's office in early September, and that he would have answers by September 28. The district court therefore continued the motion for sanctions to October 9. Not until October 7 did Royce send seven folders of materials to Inryco's counsel. None of the interrogatories was answered. Inryco's counsel immediately telephoned Royce to complain that the materials were insufficient to satisfy the outstanding discovery requests. Royce made no further attempts to comply.

When the motion for sanctions was called on October 9, Inryco's counsel told the court that Royce's responses were inadequate. Royce did not appear. The court ordered the defendants to comply with all discovery requests within seven days, and set a status hearing for October 30. Inryco's counsel sent a copy of the order to Royce.

Because two weeks passed without response from Royce, Inryco initiated the action which culminates in this appeal. On October 28, Inryco's counsel personally served Royce with a motion for entry of default on the grounds that the defendants had failed to answer or otherwise plead since May 15, 1981. Royce told the lawyer that he was on trial in another matter. The district court continued both motions—for sanctions and for default—to November 6. Despite the substantial threat to the defendants' interests posed by the pending motions, Royce did not appear in court on November 6. The court entered a continuance to November 13, and ordered Inryco to serve Royce with notice and a copy of a proposed judgment order against the defendants before the next motion call.

Inryco's counsel personally served Royce with the pleading on November 11. Royce explained in a telephone conversation with Inryco's counsel on November 13 that Royce was experiencing difficulty in getting documents from his clients. Inryco's counsel indicated that Royce should explain his situation to the court, but Royce did not appear when the motions were called that day. The court entered the default order and set December 4 for proof of damages.

When Inryco appeared on December 4 with affidavits attesting to the damages it had incurred, the court entered judgment against the defendants for $225,316.93. Royce did not appear.

### B. Inryco's arguments.

Inryco characterizes the facts above as clearly indicating the defendants' disregard for this litigation, which Inryco argues was inexcusable. Inryco notes that its lawyers repeatedly told Royce about pending pleadings and the defendants' allegedly insufficient responses, but got virtually nothing in return. For example, in its memorandum in opposition to the defendants' motion to vacate the default judgment, Inryco called the seven folders delivered to it on October 7 "junk."

In addition, Inryco accuses Royce and the defendants of deliberately sabotaging the arbitration proceedings during the stay so that the case would languish perpetually

before both tribunals. Inryco alleges that the defendants purposely withheld payment of fees to the arbitrator and misinformed the arbitrator that the arbitration proceedings should be held in abeyance until court actions ended. Also in this regard, Inryco claims that the defendants not only neglected facets of the litigation, but also "engaged in a strategy of delay throughout this case."

### C. The defendants' arguments.

The defendants present a materially different characterization of the facts precipitating default. They argue principally that Royce's failures during the eighteen months this case was before the trial court resulted from inadvertence and excusable neglect. They deny any scheme to purposely delay the suit by applying for and receiving a stay in the district court while at the same time undermining arbitration efforts. (The defendants do not contest the fact that they did not pay required fees so that the arbitration could proceed.) Moreover, they claim that Royce missed the court dates because he believed either that they were unnecessary in light of the pending arbitration or that his responses to discovery, notwithstanding their tardiness, mooted the plaintiff's pleadings regarding discovery.

For example, in his affidavit in support of the defendants' motion to vacate the default judgment—in which he admitted knowing of the pending court date—Royce stated that he skipped the October 9, 1981, call on the motion for sanctions because he thought the "substantial documents" supplied to Inryco settled the issue. Royce characterized his failure to comply fully with discovery requests as "negotiations" concerning discovery. Royce also noted that "[d]espite ... having failed to file a formal appearance with the Clerk of the Court, [he] was kept apprised of the major actions in the litigation."

Later in his affidavit, Royce swears that after October 9 he was never again contacted by Inryco in any way concerning the case. (Inryco's counsel claims contact was made or attempted at least seven more times.)

The defendants themselves disclaim any knowledge of all discovery requests and court orders. They further note that when they learned of the default judgment they immediately engaged new counsel, who remedied all of Royce's errors and filed the motion to vacate.

### II. RULE 60(b)

The defendants first learned of the default judgment against them near the end of January 1982. Within two weeks, the defendants' new counsel filed an answer to Inryco's amended complaint, responses to Inryco's production requests, answers to Inryco's first set of interrogatories, an appearance, a motion to vacate the default judgment and a memorandum in support of that motion, and the papers necessary for Royce to withdraw as counsel.

In their memorandum supporting the motion to vacate, the defendants argued principally grounds under Federal Rule of Civil Procedure 60(b)(1): that the default order was entered as a result of a mistake, inadvertence, surprise, or excusable neglect.[1]

### A. General application of Rule 60(b).

"The philosophy of modern federal procedure favors trials on the merits, and default judgments should generally be set aside

---

1. Rule 60(b) reads in part:

 (b) ... On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the

judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court.

where the moving party acts with reasonable promptness, alleges a meritorious defense to the action, and where the default has not been willful." *A.F. Dormeyer Co. v. M.J. Sales & Distributing Co.*, 461 F.2d 40, 43 (7th Cir.1972) (quoting *Thorpe v. Thorpe*, 364 F.2d 692, 694 (D.C.Cir.1966)).

These standards are not intended to include challenges to the correctness of the default judgment; a Rule 60(b) motion to vacate should not be treated as a substitute for an appeal. *DeFilippis v. United States*, 567 F.2d 341, 342 (7th Cir.1977). When a litigant merely challenges the propriety of a default order, arguing that it was erroneous under the circumstances, the district court may deny Rule 60(b) relief. That rule is reserved for extraordinary relief. A litigant therefore must show exceptional circumstances to justify overturning the default judgment. *United States v. Forty-Eight Thousand, Five Hundred Ninety-Five Dollars*, 705 F.2d 909, 912 (7th Cir.1983); *Planet Corp. v. Sullivan*, 702 F.2d 123, 125 (7th Cir.1983).

In its efforts to alleviate the tension that occasionally arises among the principles of promoting efficient, effective litigation by demanding that litigants conduct their cases reasonably, favoring disposition of cases by trial on the merits, and according full justice to all parties, a court must take care to order default only when it is appropriate and absolutely necessary, but then, consequentially, only vacate its decision under Rule 60(b) when the evidence so requires.

*B. Rule 60(b)(1).*

The defendants argue that even a slight abuse of discretion by the district court in denying them relief requires us to reverse. That is not the standard. The decision on a Rule 60(b) motion is left to the broad discretion of the trial court. *Planet Corp. v. Sullivan*, 702 F.2d at 125; *United States v. An Undetermined Quantity of an Article of Drug Labeled as Benylin Cough Syrup (Parke, Davis)*, 583 F.2d 942, 946 (7th Cir.1978). A standard of review even more stringent than the "abuse of discretion"

standard would be inconsistent with the substantial discretion vested in the district court. Moreover, the language used in opinions from this circuit indicate that the general standard applies. *United States v. Forty-Eight Thousand, Five Hundred Ninety-Five Dollars*, 705 F.2d at 912 (7th Cir.1983); *Breuer Electric Manufacturing Co. v. Toronado Systems of America, Inc.*, 687 F.2d 182, 187 (7th Cir.1982); *Ellingsworth v. Chrysler*, 665 F.2d 180, 184 (7th Cir.1981); *Textile Banking Co. v. Rentschler*, 657 F.2d 844, 850 (7th Cir.1981); *Parke, Davis*, 583 F.2d at 947; *Ben Sager Chemicals International, Inc. v. E. Targosz & Co.*, 560 F.2d 805, 809 (7th Cir.1977); *A.F. Dormeyer*, 461 F.2d at 42. Although this court in 1962 quoted the District of Columbia Circuit stating that a "slight abuse of discretion in refusing to set aside a default judgment is sufficient to justify a reversal," *Leong v. Railroad Transfer Service, Inc.*, 302 F.2d 555, 557 (7th Cir.1962), that language long ago disappeared from our opinions.

Additionally, in these circumstances we see little utility in attempting to distinguish between a slight abuse of discretion and an abuse of discretion. Fortunately, such line-drawing is unnecessary, for the district court exercised its discretion properly.

The defendants argue that excusable neglect lead to the default judgment. Virtually all of Royce's miscues, they claim, can be traced to his inadvertent failure to file an appearance. Royce claims that because of that omission he did not receive notices of the numerous status hearings, and did not even learn of his failure to file an appearance until two months after the default judgment was entered. Similarly, the defendants argue that Royce never received notices of court orders or notices of the motions for sanctions and default.

If the situation was as the defendants describe, then the defendants might have a tenable theory for relief under the principles enunciated in *A.F. Dormeyer*, 461 F.2d at 43. In *A.F. Dormeyer*, the defendant's counsel had prepared an answer which was

mailed to the plaintiff, but had neglected to arrange filing the answer with the court. The defendant's lawyer practiced in New York, where such filings were not generally required. The defendant's only mistake was its failure to file the answer. Yet, even though the plaintiff received the answer, it sought and obtained a default judgment against the defendant within three months from the time that the defendant was originally served with summons. The *A.F. Dormeyer* court ruled that the district court erred in denying a motion to vacate the default judgment, holding that failure to file the answer was excusable neglect.

■ However, the *A.F. Dormeyer* facts hardly parallel those before us. The district court in this case did not base its default judgment merely on Royce's failure to file an appearance. Instead, it found, even construing the evidence in a light most favorable to the defendants, a record "replete with inexcusable omissions, deceits, and irresponsibilities." The court found that Royce never filed an appearance; never paid any filing fees; never answered the original or amended complaints, even after a reminder from Inryco's counsel; never counterclaimed, even after being directed to do so by his client; never responded to interrogatories; failed for months to inform his clients of outstanding discovery requests; misrepresented to Inryco that he was having trouble getting documents from his clients; and failed to appear at five status calls without once attempting to ascertain from the court the current status of the case.

We can find no error in the court's conclusions. It was well within the court's discretion to refuse the Rule 60(b)(1) motion. We agree that Royce's conduct does not constitute excusable neglect. In fact, Royce showed a callous disregard for the procedures in this circuit. Telephone calls, letters, summonses, and other attempts at contact by both Inryco's counsel and the court were disregarded. Royce's inaction forced the court to act directly against the defendants.

Royce's failure to file an appearance does not excuse his mistakes. For example, Royce was served with notices of several hearings and should have attended them—especially the November 13, 1981, hearing on the motions for sanctions and a default judgment—regardless of his perceptions concerning the status of the case.

■ The defendants argue that affidavits in support of their motion to vacate conflicted in parts with Inryco's affidavits in opposition, and that therefore the motion should have won when all doubts were resolved in their favor. *See Jackson v. Beech,* 636 F.2d 831 (D.C.Cir.1980). We disagree. While some of the defendants' claims may have conflicted with Inryco's allegations, other allegations against the defendants remained unrefuted. We will not strain to fill in gaps in the defendants' affidavits. *See United States v. Various Firearms,* 523 F.2d 47, 51 (7th Cir.1975) (court should not read in additional allegations to create a genuine issue of fact). Additionally, as a general matter, testimony that on its face seems to contradict initial allegations may not actually raise doubts as to the facts. The trial judge must weigh opposing evidence. If the evidence offered will not support a claim for relief even after giving the movant the benefit of all doubts, then the trial judge may deny the motion. The district court committed no error in its ruling here.

### C. Rule 60(b)(6).

Following the district court's denial of their Rule 60(b) motion to vacate, the defendants filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The only cognizable arguments supporting that motion were: (a) the district court, after it found Royce's conduct inexcusable, deceitful, and irresponsible, should have granted the motion to vacate on the authority of Rule 60(b)(6); and (b) the defendants could not be charged with their lawyer's conduct.

The district court's denial of the motion to alter or amend raises several issues. First, is a Rule 59(e) motion proper after

denial of a Rule 60(b) motion? If it is, may the defendants raise a Rule 60(b)(6) claim in the motion to alter or amend? Third, once both those hurdles are cleared, may the defendants assert the same grounds to support the Rule 60(b)(6) claim that were urged as support for an earlier Rule 60(b)(1) claim? Fourth, is a lawyer's gross negligence "[an]other reason justifying relief from the operation of the judgment" under Rule 60(b)(6)?

 We conclude that a Rule 59(e) motion is proper to challenge the Rule 60(b) ruling. Additionally, the defendants here can properly argue 60(b)(6) grounds in their motion to alter or amend, even though the same factual circumstances underlay the Rule 60(b)(1) claim. Finally, we reserve the issue whether a lawyer's grossly negligent conduct can constitute grounds to vacate a default judgment, for here the defendants themselves were negligent.

1. A Rule 60(b) motion does not toll the thirty-day time limit of Federal Rule of Appellate Procedure 4(a)(1) for taking an appeal from the underlying judgment. *Browder v. Director, Illinois Department of Corrections,* 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978); *Ellingsworth v. Chrysler,* 665 F.2d at 183. However, denial of a Rule 60(b) motion is itself an appealable judgment. *Ellingsworth v. Chrysler,* 665 F.2d at 183; Fed.R.Civ.P. 54(a). Therefore, a losing party may challenge that judgment with a motion to alter or amend under Rule 59(e). *See Williams v. Bolger,* 633 F.2d 410, 413 (5th Cir.1980); *cf. Morgan Guaranty Trust Co. v. Third National Bank,* 545 F.2d 758 (1st Cir.1976) (Rule 59(e) motion appropriate after order computing interest and costs even though after entry of formal judgment). The Rule 59(e) motion challenges only the Rule 60(b) judgment, not the validity of the underlying judgment. *Daily Mirror, Inc. v. New York News, Inc.,* 533 F.2d 53, 56 (2d Cir.), *cert. denied,* 429 U.S. 862, 97 S.Ct. 166, 50 L.Ed.2d 140 (1976). An appeal following a ruling on the Rule 59(e) motion also does

not bring the underlying judgment up for review.

 Such is the status of this case. The defendants filed notices of appeal after both the Rule 60(b) ruling (it was already too late to challenge the default judgment itself) and the Rule 59(e) ruling. Filing the Rule 59(e) motion voided the first notice of appeal. Fed.R.App.P. 4(a)(4); *Williams v. Bolger,* 633 F.2d at 413. So we have before us simply the appeal from an adverse ruling on the motion to vacate.

2. Inryco argues, nonetheless, that the defendants' Rule 59(e) motion was an impermissible attempt to advance a new theory for relief which should have been raised in the Rule 60(b) motion to vacate. Inryco contends that because the motion to vacate did not assert grounds for relief under Rule 60(b)(6), that theory is improper in the motion to alter or amend the judgment.

 Because default judgments are not favored by modern courts, we should broadly construe subsequent motions for relief from those judgments to encompass whatever grounds are reasonably presented. *Cf. Textile Banking Co. v. Rentschler,* 657 F.2d at 849 (Rule 60(b) motion there, "even under the most generous characterization," did not qualify as a Rule 59(e) motion). The defendants' motion to vacate advanced grounds under Rule 60(b) only in general terms, without specifically citing that rule. The memorandum supporting the motion cited Rule 60(b)(6). Although the defendants actually argued only grounds under Rule 60(b)(1), the appearance of Rule 60(b)(6) in the memorandum indicates at least that the defendants had not abandoned that ground for relief. Our antipathy toward default judgments in general, and our particular awareness of the severity of this judgment, lead us to accept the defendants' claim that the Rule 59(e) motion asked the district court to reconsider Rule 60(b)(6) grounds which were presented in the motion to vacate.[2]

**2.** We note that the defendants' Rule 60(b)(6) claim should have been presented and argued

*more positively in the motion to vacate. The*

■ A more difficult issue is whether the defendants can use the same set of circumstances to support claims under both Rules 60(b)(1) and 60(b)(6). This circuit has said in dicta that Rules 60(b)(1) and 60(b)(6) are "mutually exclusive so that they both cannot apply to the same alleged factual situation." *Ben Sager Chemicals,* 560 F.2d at 810 n. 3 (quoting *Bershad v. McDonough,* 469 F.2d 1333, 1336 n. 3 (7th Cir.1972)). The *Bershad* court relied on *Transit Casualty Co. v. Security Trust Co.,* 441 F.2d 788, 792 (5th Cir.), *cert. denied,* 404 U.S. 883, 92 S.Ct. 211, 30 L.Ed.2d 164 (1971). In *Transit Casualty,* the Fifth Circuit indicated that a litigant should not be allowed to circumvent the one-year time limitation for Rule 60(b)(1) claims by asserting grounds cognizable under Rule 60(b)(1) in a Rule 60(b)(6) motion, which may sometimes be filed more than one year after judgment. *Ben Sager Chemicals, Bershad,* and *Transit Casualty,* among others, stand for the proposition that Rule 60(b)(6) cannot be the basis for relief when the facts asserted fall within the purview of one of the other five subsections of Rule 60(b). Rule 60(b)(6) may apply only if Rule 60(b)(1) does not apply. Those courts do not forbid use of the same set of factual circumstances to support a Rule 60(b)(6) claim when those facts do not constitute mistake, inadvertence, surprise, excusable neglect, or grounds under Rules 60(b)(2) through (5).

■ Inryco argues that only Rule 60(b)(1) was available to the defendants because that was the principal basis of their motion to vacate. But the district court specifically ruled that Rule 60(b)(1) did not apply to the facts asserted. Accordingly, when the district court refused to vacate the default judgment without full discussion of Rule 60(b)(6), the defendants quite properly moved for alteration of the judgment. Our conclusion does not undermine the legislative requirement that a motion to vacate be brought within one year of judgment if relief is to be based on a theory of excusable neglect.

failure to press the claim earlier, however, has

3. The basis for the defendants' claim under Rule 60(b)(6) is that their lawyer was grossly negligent. This, they argue, is an extraordinary circumstance warranting relief.

For the purposes of their Rule 60(b)(6) claim, the defendants concede that Royce's conduct was lamentable. The parties do not agree, however, on whether gross negligence constitutes an extraordinary circumstance entitling a movant to Rule 60(b)(6) relief. Courts also do not agree. *Compare L.P. Steuart, Inc. v. Matthews,* 329 F.2d 234, 235 (D.C.Cir.), *cert. denied,* 379 U.S. 824, 85 S.Ct. 50, 13 L.Ed.2d 35 (1964) ("[C]lause (6) [of Rule 60(b)] is broad enough to permit relief when as in this case personal problems of counsel cause him grossly to neglect a diligent client's case and mislead the client.") *with Schwarz v. United States,* 384 F.2d 833, 835–36 (2d Cir.1967) (" [I]f the attorney's conduct was substantially below what is reasonable under the circumstances, the client's remedy is a suit for malpractice.").

This issue is more difficult to resolve than it may seem at first glance. On the one hand, courts hesitate to punish a client for its lawyer's gross negligence, especially when that lawyer affirmatively misled the client. On the other, as Justice Harlan noted for the Supreme Court in *Link v. Wabash R.R.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), if the client freely choses counsel it should be bound to counsel's actions.

There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of

no bearing on our decision.

which can be charged upon the attorney." *Smith v. Ayer,* 101 U.S. 320, 326 [25 L.Ed. 955].

*Id.* at 633–34, 82 S.Ct. at 1390 (footnote omitted). *See* 7 J. MOORE & J. LUCAS, MOORE'S FEDERAL PRACTICE ¶ 60.27[2], at 365–69 (2d ed. 1979). Logic and legal authority support both lines of reasoning.

In *Boughner v. Secretary of Health, Education & Welfare,* 572 F.2d 976 (3d Cir. 1978), the Third Circuit affirmed Rule 60(b)(6) relief for "neglect so gross that it [was] inexcusable," stating:

> In reaching our decision that the circumstances here are sufficiently exceptional and extraordinary so as to mandate relief pursuant to Rule 60(b)(6), we are not unmindful of the need for judicial eagerness to expedite cases, to fully utilize the court's time, to reduce overcrowded calendars and to establish finality of judgments. However, these commendable aspirations should never be used to thwart the objectives of the blind goddess.
>
> Furthermore, the entry of summary judgments precluded an adjudication on the merits of the appellants' claims for benefits, thus constituting the "extreme and unexpected hardship" addressed by the Supreme Court [in *United States v. Swift,* 286 U.S. 106 (1932)].

*Id.* at 978–79. *See also Jackson v. Washington Monthly Co,* 569 F.2d 119, 122–23 (D.C.Cir.1978) ("Dismissals for misconduct attributable to lawyers and in no wise to their clients invariably penalize the innocent and may let the guilty off scot-free. That curious treatment strikes us as both anomalous and self-defeating." (footnote omitted)).

■ Just as we did in *Ben Sager Chemicals,* 560 F.2d at 810–11, we expressly reserve this issue for another day. The defendants here were not diligent in pursuing this case and therefore would not prevail even if gross negligence qualified as another Rule 60(b) ground for relief, because courts allowing such relief uniformly require a diligent, conscientious client. Affidavits submitted by the defendants showed

that they failed to follow the progress of the case and failed to regularly inquire of their lawyer or the court as to the case's current status. The affidavit of Joseph P. Dooley, president of MECO, indicated that after he retained Royce in May 1980, he had virtually no contact with Royce for more than a year. In the twenty months between filing the complaint and the default judgment, the defendants contacted Royce fewer than a half a dozen times, and at no time knew the precise procedural status of the case. Moreover, our thorough review of the record reveals that Royce did not actually mislead the defendants. The district court found that the defendants apparently neither specifically asked Royce how the lawsuit was progressing nor found out for themselves.

The defendants' neglect precludes Rule 60(b)(6) relief.

### D. *Imputing conduct to defendants.*

■ Most courts are understandably hesitant to impute the misdeeds of a lawyer to his client. To do that shifts the focus of a case away from the dispute between the parties and penalizes parties less culpable than the lawyer. Default judgments are not meant for disciplining a member of the bar at the expense of a litigant's day in court. *Jackson v. Beech,* 636 F.2d at 837.

■ Nevertheless, important factors lead us to affirm the district court's order. First, much of the damage caused by the defendants' negligence and their lawyer's neglect cannot be undone. Inryco has suffered a two-year delay in resolving its dispute. The court especially was victimized. It spent time and money attempting to administer the lawsuit, only to be frustrated by the defendants' failures to act. Furthermore, the court's efforts indicated that a lesser sanction likely would not have been effective.

The defendants stress that they manifested innocence by quickly curing procedural defaults and moving to vacate as soon as they learned of Royce's mismanagement. This argument is not persuasive: the reme-

dial actions after the judgment of default do not excuse the months of egregious neglect. *See generally Universal Film Exchanges, Inc. v. Lust,* 479 F.2d 573, 576–77 (4th Cir.1973) ("[T]he client must pay, at least initially, the penalty of his counsel's neglect." (citing *Link v. Wabash R.R.*)).

### III. SUMMARY

This appeal challenges only the correctness of the order denying a Rule 60(b) motion to vacate the default judgment. The district court rejected the defendants' characterization of their lawyers conduct as excusable neglect under Rule 60(b)(1). Additionally, the court ruled Rule 60(b)(6) inapplicable. We find no abuse of discretion, and affirm the judgment.

The lawyer Royce's conduct was grossly negligent. He acted with complete disregard for the judicial process. But even if such conduct might otherwise raise Rule 60(b)(6) grounds for relief, the defendants lose this appeal because they, too, were neglectful.

■ In closing, we want to further assuage fears that our decision somehow protects the lawyer—one of our own profession—at the expense of the client. The District of Columbia Circuit recognized that fear in *Jackson v. Washington Monthly Co.,* 569 F.2d at 123–24, writing:

> Public confidence in the legal system is not enhanced when one component punishes blameless litigants for the misdoings of another component of the system; to laymen unfamiliar with the fundamentals of agency law, that can only convey the erroneous impression that lawyers protect other lawyers at the expense of everyone else.

We agree, but note that public impression may not be so unfavorable as the D.C. Circuit fears. The idea that a default judgment may penalize the innocent and let the guilty lawyer go free is tempered by the fairly common knowledge that a viable avenue for relief exists for truly deserving litigants. Just as with other professionals, a remedy for an attorney's professional negligence is a suit for malpractice. *Bury*

*v. McIntosh,* 540 F.2d 835, 836 (5th Cir. 1976); *Universal Film Exchanges, Inc. v. Lust,* 479 F.2d at 577; *Brown v. E.W. Bliss Co.,* 72 F.R.D. 198, 200–01 (D.Md.1976).

AFFIRMED.