Diane PASSARELLA, Plaintiff,

v.

HILTON INTERNATIONAL COMPANY, Defendant.

No. 85 C 4392.

United States District Court, N.D. Illinois, E.D.

Dec. 13, 1985.

See publication Words and Phrases for other judicial constructions and definitions.

---

Michael B. Cohen, Chicago, Ill., for plaintiff.

Francis J. Lehayne III, Condon, Cook & Roche, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

On August 5, 1985 this Court entered a default judgment in favor of Diane[1] Passarella ("Passarella") and against Hilton International Company ("Hilton") for $18,000 plus interest and costs. Hilton now moves to vacate that default judgment under Fed.R.Civ.P. ("Rule") 60(b). For the reasons stated in this memorandum opinion and order, Hilton's motion is denied.

### Facts

Though the parties have not entered into a formal stipulation of facts, for purposes of the present motion the facts are either matters of court record or undisputed. Facts in the first (court record) category are these (all dates are in 1985):

1. On May 3 Passarella filed a complaint against Hilton Hotels Corporation ("Hilton Hotels"), demanding $18,000 (plus attorney's fees and costs) for loss of a diamond ring during a stay at the Caribe Hilton Hotel ("Caribe Hilton") in Puerto Rico.

2. On May 8 this Court sua sponte dismissed the Complaint for failure properly to allege subject matter jurisdiction (diversity of citizenship).

3. On May 17 Passarella filed an amended complaint (the "Complaint"), this time substituting Hilton as defendant (Hilton and Hilton Hotels are wholly unrelated corporations).[2]

4. On May 20 Hilton's Vice President and General Counsel Melvin Milligan ("Milligan") was served with, and personally acknowledged receipt of, a copy of the Complaint and a summons of this District Court to answer within twenty days of service (by June 9).

5. On July 3 (no answer or other defensive pleading having been filed), this Court—acting on Passarella's motion supported by a showing of proper service—ordered a default against Hilton.

6. On August 5, after a proveup hearing on damages, this Court ordered entry of judgment against Hilton for $18,000 plus interest and costs.

7. On August 22 Passarella filed with this District Court an affidavit for garnishment directed at Chase Manhattan Bank ("Chase"), alleged to be Hilton's debtor.

8. On September 20 attorneys for Hilton filed appearances in this District Court and moved to vacate the default judgment.

9. On October 2 Passarella moved for conditional judgment against Chase for failure to answer this District Court's garnishment summons.

---

1. Counsel for both sides have spelled Passarella's first name two ways ("Diane" and "Dianne") in various filings. Passarella's own counsel, who might be expected to know, seems lately (though not originally) to have preferred "Dianne." Passarella herself (who *does* know) appears to have signed the initial complaint with only one "n" but the amended complaint with two—and the amended complaint itself contains instances of both spellings. This Court has adopted the one-"n" alternative because the case began in that form and there has been no request for a formal order changing the case caption.

2. As the later factual recital indicates, Hilton Hotels' lawyer had written Passarella's lawyer, directing him to Hilton as the proper defendant.

10. On October 4 this Court denied Passarella's motion for conditional judgment on the ground Chase had been improperly served.

Hilton has also submitted two affidavits from Milligan, who states he was first aware of the existence of Passarella's claim on May 17, when he received a carbon copy of a letter from counsel for Hilton Hotels to Passarella's attorney explaining Hilton Hotels had no connection to Caribe Hilton. That letter also stated—erroneously, according to Milligan—Hilton was Caribe Hilton's manager. Milligan's affidavit acknowledges receipt of the Complaint but says Milligan on May 20 "prepared and directed correspondence" to Adele Quiles ("Quiles") of Continental Insurance Company ("Continental"), Hilton's liability carrier, "forwarding" the Complaint to Continental for defense under Hilton's liability policy. On June 3, after having received further information about the events alleged in the Complaint, Milligan "prepared and directed" additional correspondence to Quiles. Milligan states those two letters were sent via first class mail to Quiles' correct business address and neither was returned as undelivered. Milligan does not tender any correspondence from Continental responding to either of his letters—or even acknowledging their receipt.

After June 3 Milligan claims he had no further contact with Quiles or anyone else at Continental as to Passarella's claim. Instead the next voice he heard came some 15 weeks later, on September 18, when he received a telephone call from someone at Chase advising him of the pending garnishment proceeding. Milligan attempted to reach Continental that day but did not get in touch with it until the following morning. Assertedly he then learned for the first time Continental had received neither the May 20 nor the June 3 correspondence. Needless to say, Continental had taken no action on Hilton's behalf.

Quiles' affidavit says she never received Milligan's letters and was unable to locate them after a "diligent and thorough search" of her office and department. She concludes—though of course that is not really a fact of which she can have actual knowledge—Continental never received either of Milligan's letters.

Finally, Hilton offers the affidavit of Vi Sanvenero ("Sanvenero"), a senior liability examiner at Continental. Sanvenero states she "undertook an internal investigation" to determine whether Continental had received notice of Passarella's suit before Milligan's September 19 call. That investigation covered both the claims department's own records and persons employed by other Continental departments. Sanvenero says she was "unable to turn up any information whatsoever regarding the existence of [Milligan's letters] or their receipt by any person at [Continental]." Like Quiles, Sanvenero concludes Milligan's letters were not received by Continental.[3]

---

3. Passarella attempts to get some mileage out of (a) statements in the Quiles and Sanvenero affidavits (Quiles Aff. ¶ [6]; Sanvenero Aff. ¶ 16) that Milligan's letters, "if sent," were not received by Continental and (b) Quiles' statement (Quiles Aff. ¶ 13) that Milligan "purportedly" sent the two letters to her. As Hilton's R.Mem. 8–9 indicates, however, those qualifications merely indicate the extent of Quiles' and Sanvenero's personal knowledge. Neither can (or does) claim any knowledge of whether the letters were sent. On the other hand, Passarella correctly observes the only potential proof the letters *were* mailed is Milligan's affidavit, and Milligan does not actually say he put the letters in the mail or saw someone do so. *Chandler Leasing Corp. v. UCC, Inc.,* 91 F.R.D. 81, 83 (N.D.Ill.1981) took a dim view of a third-party defendant's claim he mailed a summons to his attorneys, who failed to appear and plead in his behalf. There the third-party defendant's affidavit said he had mailed the materials, but the court pointed out his failure to submit affidavits from his attorneys stating they had not received the materials undercut his "lost in the mail" claim. Here we have the mirror-image of *Chandler's* facts, plus the additional fact of *two* mailings two weeks apart alleged to have gone astray and entered a black hole (neither in Continental's files nor returned to Hilton)—lengthening the odds of improbability astronomically. Nevertheless, as this opinion later reflects, resolution of Hilton's motion does not depend on whether Milligan is telling the truth, though if he were lying (or if there had been a double breakdown in the mailing procedures at Hilton's end) the result would be even more easily reached.

### ■ *Rule 60(b) Standards and Their Application*

Rule 60(b) provides in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time....

Rule 60(b) "is reserved for extraordinary relief," requiring a defendant to "show exceptional circumstances to justify overturning the default judgment." *Inryco, Inc. v. Metropolitan Engineering Co.*, 708 F.2d 1225, 1230 (7th Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 347, 78 L.Ed.2d 313 (1983). Any defendant seeking Rule 60(b) relief from a default judgment must satisfy three criteria (*United States v. Forty-eight Thousand, Five Hundred Ninety-five Dollars*, 705 F.2d 909, 912 (7th Cir.1983));[4]

1. Its motion must be filed within a "reasonable" time.

2. Its default must have been the result of "excusable neglect."

3. It must "demonstrate" a "meritorious defense" to the underlying action.

Taking those criteria in reverse order, Hilton first and most strenuously argues it has a meritorious defense to Passarella's claim. In fact it advances three:

1. Hilton does not own or operate Caribe Hilton.[5]

2. Hilton denies all the factual allegations of the Complaint as to the existence and whereabouts of Passarella's diamond ring.

3. Puerto Rico's Innkeeper's Act of 1955 is a bar to Passarella's claim.

■ This Court may assume arguendo that one or more of those defenses is "meritorious," though a court on a Rule 60(b) motion is not obliged actually to investigate the merits of an asserted defense. Rule 60(b) motions "should not be treated as a substitute for an appeal." *Inryco*, 708 F.2d at 1230. Precisely for this reason Hilton misinterprets the import of the "meritorious defense" criterion. Satisfying the court of the existence of a meritorious defense is not a factor that supplants or outweighs the other criteria. Instead it is a precondition to relief, stemming from considerations of judicial economy. If a Rule 60(b) movant cannot demonstrate a meritorious defense, it would be a waste of time and energy to reopen the default judgment. In other words, if a defendant clearly has no defense, a default judgment against him or her could be viewed as harmless error even in the absence of unreasonable delay or inexcusable neglect. But the fact a defendant may have a dead-bang defense as opposed to a shaky one does not argue more strongly in favor of Rule 60(b) relief unless the other criteria are met too.[6] By demonstrating a meritorious defense, Hilton simply clears the first of three hurdles. See *Ellington v. Milne*, 14 F.R.D. 241, 242 (E.D.N.C.1953).

■ It clearly falls at the second. Hilton argues its failure to answer is a matter of "excusable neglect." It recognizes the standard of excusable neglect is one of "honest mistakes rather than willful misconduct, carelessness or negligence." *Ell-*

---

4. Hilton cites a great many cases, but hardly any from our Court of Appeals. Standards for granting Rule 60(b) motions are not uniform in all circuits. Compare, e.g., *United Coin Meter Co. v. Seaboard Coastline Railroad*, 705 F.2d 839, 845 (6th Cir.1983) (articulating a very different three-factor test).

5. According to Hilton, Caribe Hilton is owned by Puerto Rico Industrial Development Company and operated under lease by Hilton International of Puerto Rico, Inc., a wholly-owned Hilton subsidiary.

6. Indeed, as *Forty-eight Thousand, Five Hundred Ninety-five Dollars*, 705 F.2d at 912 points out, Rule 60(b) itself does not mention "meritorious defense" as a basis for granting relief. That further illustrates the principle a meritorious defense should not override the other factors by eliciting the sympathy of a court. Rule 60(b) provides a mechanism for relief based on procedural factors, not a "substitute for appeal" or a reopening of the merits.

*ingsworth v. Chrysler,* 665 F.2d 180, 185 (7th Cir.1981). Assuming (again arguendo) Hilton's default was not willful, Hilton has wholly failed to show it was not careless or negligent. Hilton's "good excuse" (Mem. 5) is that Milligan's timely transmittal of the Complaint and summons to Continental was defeated by the Post Office.

But, as Passarella correctly points out, she sued Hilton and not Continental. Hilton's indemnity contract with Continental was a matter between those two corporations and does not legally absolve Hilton from defending itself. Milligan's own affidavit says he received the papers from this District Court and merely put them in the mail to Quiles without even once following up with an inquiry after some four months of silence. Admittedly, as Hilton's vice president and general counsel Milligan was most unlikely to have filed his personal appearance in this action, but as an attorney he can scarcely claim ignorance of the obligations created by a summons and complaint.[7] "Neither ignorance nor carelessness on the part of a litigant or his attorney will provide grounds for Rule 60(b) relief." *Bershad v. McDonough,* 469 F.2d 1333, 1337 (7th Cir.1972).

Thus Hilton's strenuous attempts to show Milligan's letters to Continental were lost in the mail are bootless as a legal matter. This is not (of course) to say it is careless to trust one's legal affairs to the mail. But whatever volume of litigation a business may have, the notion of its not establishing some sort of check list or follow up procedure bespeaks negligence of itself.[8] Hilton's asserted lack of negligence, considering its total inattention in the face of Continental's silence, is utterly unconvincing.

Nor is this Court impressed with Hilton's assertion (R.Mem. 13) it "had absolutely no reason in the world to delay going forward with this case" since its defenses are meritorious. If that contention is intended to suggest Hilton was neither negligent nor careless because it would have been irrational to be negligent or careless, that could be argued of every negligence case. Rationality or the lack of it may be probative of whether willful misconduct has taken place, but it is quite beside the mark in the present situation of inexcusable neglect.

Having failed to clear the second Rule 60(b) hurdle, Hilton never even reaches the one remaining. This Court therefore need not decide whether Hilton acted "within a reasonable time" as Rule 60(b) requires. Once inexcusable neglect has worked its effect and led to an adverse judgment, no post-judgment diligence can transform the prior delinquency into "excusable neglect."

### Conclusion

Hilton has not satisfied the requirements for relief under Rule 60(b). Its motion to vacate this Court's default judgment for $18,000 plus interest and costs in Passarella's favor is denied.

---

7. Milligan's Aff. ¶ 7 says he sent the summons and Complaint to Quiles with "correspondence," and his Aff. ¶ 8 says on June 3 he sent "documentation" of "more information concerning the nature of the incident alleged by [Passarella]." Milligan is silent as to whether he informed Quiles of all facts necessary to establish Hilton's three now-asserted defenses or that Continental had such information on hand. Surely a lawyer would find it more than a trifle odd that Continental did not acknowledge receipt of either letter, let alone communicate with him at all concerning possible lines of defense. And if (like most top-level legal officers of substantial corporations) Milligan considered he could not be expected to carry in his head a mental follow-up calendar on the numerous matters that come across his desk, that would all the more reflect Hilton's negligence in failing to establish and follow an appropriate tickler system.

8. In that respect it is worth noting Sanvenero's affidavit suggests Continental has meticulous internal procedures to keep track of matters. But Milligan's affidavit displays an eloquent silence on that score as to Hilton's procedures (or more accurately the lack of them) in following up on litigated claims. And as the text has made plain, it is Hilton's "excusable neglect" vel non (and not Continental's) that is relevant as to Passarella.