**In re ASPHALT CONTRACTORS EQUIPMENT COMPANY, INC., Debtor.**

**C. Kenneth STILL, Trustee, Plaintiff,**

v.

**Mack COLE and Charles H. Robertson, Defendants.**

No. 1-78-01347.

United States Bankruptcy Court, E.D. Tennessee.

Aug. 7, 1987.

William M. Foster, Hall, Haynes, Lusk & Foster, Chattanooga, Tenn., for plaintiff.

Shelley Rucker of Miller & Martin, Chattanooga, Tenn., for defendants.

RALPH H. KELLEY, Chief Judge.

The question before the court is whether to vacate a default judgment for $113,000 entered against the defendants, Mr. Robertson and Mr. Cole, in favor of the plaintiff, the bankruptcy trustee in the case of Asphalt Paving Contractors Equipment Company (the bankrupt).

The bankrupt filed a bankruptcy liquidation case in December, 1978. C. Kenneth Still was immediately appointed receiver and later was appointed trustee. In March, 1979, Mr. Robertson and Mr. Cole were in the trustee's office discussing some blueprints for asphalt manufacturing equipment. The trustee or his lawyer warned Mr. Robertson and Mr. Cole that he might sue them to recover as preferential transfers payments they received shortly before the debtor filed its bankruptcy petition.

Mr. Robertson was acquainted with attorney Joe Bean of Winchester, Tennessee, and knew that his brother, attorney Crawford Bean, practiced in Chattanooga. On being threatened with a suit by the trustee, Mr. Robertson and Mr. Cole immediately left and went to attorney Crawford Bean's office. Crawford Bean was in practice with his sons, Russell Bean and Martin Bean. Mr. Robertson and Mr. Cole explained their problem to Crawford Bean who called in his son, Martin Bean. Crawford Bean requested a fee of $500 with the check to be written to Martin Bean. Mr. Cole wrote a check to Martin Bean for $500. According to Mr. Robertson, this $500 fee was to cover everything. Martin was supposed to keep an eye on the bankruptcy case, do what needed to be done, and let them know what they needed to do. Martin Bean denied this. He understood

that the $500 was only for an initial investigation and evaluation. He was to determine how serious the trustee was about filing suit, and to try to find two men, Carl Peters and a Mr. Jones. After he did this, he did not consider himself to be representing Mr. Robertson and Mr. Cole. However, he did not specifically tell them that he was no longer representing them.

The trustee filed the preference suit in September, 1980. This was about 18 months after Mr. Robertson and Mr. Cole paid Martin Bean the $500 fee. In the meantime, in July, 1980, Mr. Robertson had appeared at a hearing on an objection to his claim without Martin Bean to represent him. Mr. Robertson testified that whenever he received anything from the court he talked to Martin Bean about taking care of it and appearing at any hearing. He went by Martin Bean's office on the day of the hearing on the objection to the claim, but Martin Bean was not there. Since he understood that he would not be paid more than $600 on the claim in any event, he decided to go to the hearing himself.

The preference complaint was served by certified mail on Mr. Robertson and Mr. Cole but not Martin Bean. Mr. Robertson and Mr. Cole received the complaint. Martin Bean testified that Mr. Robertson called after receiving the complaint, and he told Mr. Robertson they would have to pay him an additional $2,000 fee to represent them in the preference suit. He didn't receive the fee and didn't know if he represented them or not. He didn't remember expressly telling Mr. Robertson that he would have to be paid the additional fee before he would represent them. Martin Bean's file contained a letter to Mr. Robertson, dated November 6, 1980, which was after an answer to the complaint was already past due. The letter says:

As I previously mentioned to you, the fee for representing you and Mr. Cole on the suit filed by the Trustee is two thousand dollars.

I saw Mr. Foster the other day and he wanted to know when an answer would be filed. Therefore, I suggest we file our pleading in the very near future.

In the letter Martin Bean did not specifically say that he did not represent the defendants or would not represent them until after the $2,000 additional fee was paid.

Mr. Robertson testified that he talked to Martin Bean about the complaint and Bean said he would take care of everything. Mr. Robertson denied that Martin Bean requested or said anything about an additional $2,000 fee. Mr. Robertson denied receiving the November, 1980 letter from Martin Bean mentioning the $2,000 fee. He said that Martin Bean never called him or wrote him any letter that he received; Mr. Robertson had to call or go by Mr. Bean's office.

Mr. Cole testified that the $500 fee was supposed to cover everything. He and Mr. Robertson talked to Martin Bean about everything they received from the court. They "wore out" a car coming to Chattanooga. Martin Bean told them they had plenty of time to answer.

On March 16, 1981, the court entered an order granting the trustee a default judgment against Mr. Robertson and Mr. Cole for failure to answer the complaint. The amount of the judgment was $113,000. Contrary to what the judgment says, the trustee had not previously filed a motion for a default judgment. There also was no hearing on the amount of the judgment.

The default judgment was served on Mr. Robertson and Mr. Cole by certified mail, and they received it. They consulted some lawyers or judges in Alabama about what they should do. They were advised to hire another lawyer. On March 26, 1981, they came to Chattanooga to talk to another lawyer, Josiah Baker. He was hesitant to take the case without talking to Martin Bean, since the defendants thought that Martin Bean represented them. He arranged for Martin Bean and the defendants to meet and suggested that they continue with Martin Bean as their lawyer. They agreed to continue with Martin Bean. According to Mr. Robertson, no additional fee of $2,000 was ever mentioned until he and Mr. Cole had agreed for Martin Bean to represent them after the default. Mr. Bean then said it would cost them $2,000

for him to defend them in the preference suit. Mr. Cole wrote Martin Bean a check for $2,000. Mr. Robertson also told Martin Bean that he would send him an explanation of the facts. Martin Bean had not previously requested any information about the facts of the case, and apparently knew very little from what he had been told.

On their way back to Alabama, Mr. Robertson and Mr. Cole worked on Mr. Robertson's explanation of the the facts. Mr. Robertson had the explanation typed by a stenographer and mailed it to Martin Bean within a few days after their meeting in Chattanooga on March 26, 1981.

On April 2, 1981, Martin Bean filed a motion to set aside the default judgment under Rule 60(b) of the Federal Rules of Civil Procedure. On April 7, 1981, the court entered an order directing the defendants to file affidavits in support of the motion within ten days or the motion would be dismissed. The order was served on the defendants by certified mail and was received by them on or about April 9, 1981. The court twice extended the time to file affidavits. The orders extending the time were submitted by Martin Bean. The last extension expired on June 10, 1981. No affidavits were filed by that time. The court, however, did not enter an order dismissing or denying the motion to set aside the default judgment.

Martin Bean said he got the extensions because he and the defendants had not been able to get together to do the affidavits. He couldn't remember any problems that kept them from meeting. They simply did not get together. He did not draft affidavits for the defendants to sign, and he did not set up an appointment for them to come in and execute affidavits. He thought Mr. Robertson said something about having an attorney in Alabama draft the affidavits. He read two letters from his file. The first letter to Mr. Robertson, dated April 10, 1981, says:

Enclosed please find a copy of an order I received from the United States Bankruptcy Court pertaining to the motion to set aside default judgment which I filed on behalf of you and Mr. Cole.

The two of you need to get in touch with me as soon as possible in order to submit notarized affidavits.

The second letter, dated May 26, 1981, says:

Last week Judge Kelley gave us another extension of time in order to file affidavits. This order gives us twenty days from May 21, 1981 to file.

As I mentioned to you over the phone, I'm hoping to get down to Birmingham soon to see some friends, and if so, hopefully the three of us can get together and resolve this matter.

I also talked to Mr. Foster the other day, and in my conversation with him he indicated there was no great rush for a hearing date. However, you need to get in touch with Mr. Cole and let me know something soon, because I can not get the judgment set aside until I get your sworn statement.

According to Martin Bean, he didn't hear from or try to contact Mr. Robertson after about the beginning of June, 1981. Their conversations just ceased. He was suspended from practice in the bankruptcy court in July, 1982, but didn't tell the defendants because he hadn't talked to them in about a year.

Mr. Robertson denied receiving either of the letters from Martin Bean about the need to file the affidavits. He reiterated that Martin Bean never initiated contact. He had to call Martin Bean or go by to see him. He talked to Martin Bean several times after the default judgment was entered. He and Mr. Cole stopped in Chattanooga several times and went by to see Martin Bean or called him. According to Mr. Robertson, Martin Bean always said that everything was all right, and that the explanation that Mr. Robertson had written was all the information he needed. Mr. Robertson admitted receiving the order to file affidavits and testified that he knows what an affidavit is. When asked why he didn't see to it that the affidavits were filed, since his lawyer couldn't do it by himself, he explained that his lawyer said

he had all the information he needed and would get in touch if he needed anything else. He also denied ever saying that he might have another attorney help with the affidavits.

Mr. Cole testified that Mr. Robertson would have told him if he had received the letters from Martin Bean about the affidavits, but Mr. Robertson didn't mention any such letters to him.

In March, 1983, Mr. Robertson attended the final meeting in the case. He learned that the default judgment had not been set aside. On June 23, 1983, Mr. Robertson and Mr. Cole filed their second motion to set aside the default judgment, along with affidavits stating the basic facts.

### Discussion

■ At the time the default judgment was entered, old Bankruptcy Rules 755 and 924 applied. Unlike present Rule 7055, old Rule 755 did not simply adopt Rule 55 of the Federal Rules of Civil Procedure. Rule 755(a) provided:

*Entry and Service of Copy of Judgment.* When a judgment is sought against a party in adversary proceedings and such party has, without sufficient excuse, (1) failed to plead or otherwise defend or, (2) having filed a pleading or motion is not ready to proceed with trial on the day set therefor in accordance with these rules, the court upon request therefor shall enter a judgment by default, except as provided hereinafter. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings as it deems necessary and proper.... Immediately on the entry of judgment by default the court shall serve a copy of the judgment by mail in the manner provided by Rule 705 on the party against whom the judgment is entered....

The Advisory Committee Note to Rule 755(a) says in part:

This rule is an adaptation of Rule 55 of the Federal Rules of Civil Procedure. The distinction between the entry of a default under subdivision (a) of the Civil Rule and the entry of a judgment by default under subdivision (b) of the Civil Rule and the provisions in the latter subdivision for a 3–day notice of an application for judgment and for a right of trial by jury have been eliminated from the Bankruptcy Rule as inappropriate and unnecessary in adversary proceedings. No affidavit as to the fact of default or as to the amount due is a prerequisite to the entry of the judgment by default by the court under this rule. There is no right to the entry of a judgment by default, however, against a party whose failure to appear or to be ready for trial is sufficiently excused.... The rule does not contemplate that before entering a judgment by default the court is obliged to make an inquiry into whether the party who has failed to plead or defend or is not ready to proceed with trial has a sufficient excuse....

Collier on Bankruptcy explained the operation of the rule as follows:

In the original version ... there was no provision for service of a copy of the default judgment on the party against whom it was entered. In the 1976 amendments ... this sentence was inserted in order to provide an additional safeguard against the possibility that the original service of the summons and complaint and notice of trial had failed to come to the attention of the defendant.... The amendment ... was to provide an additional service by mail so that the party against whom the default judgment was rendered had two opportunities to receive such service; first of the service of the summons, complaint and notice of trial and second, the copy of the default judgment.

When there is a default because the defendant failed to plead or defend or is not ready to proceed, a request is required to be made for the court to enter a default judgment. On such request,

the court is mandated to make such entry. . . .

13 L. King, Collier on Bankruptcy ¶ 755.04 (14th ed. 1977).

The point of these quotations is that Rule 755 did not require that the trustee file a motion for default and serve it on the defendants and have it set for hearing so that they would have notice *before* the default judgment was entered. The court also was not required to hold a hearing, after notice to the defendants, as to the amount of the judgment. Thus, the failure to give the defendants advance notice that a default judgment might be entered against them does not mean that the judgment should automatically be set aside.

Bankruptcy Rule 755(b) provided:

For good cause shown the court may set aside a judgment by default in accordance with Rule 924.

Rule 924 adopted Rule 60 of the Federal Rules of Civil Procedure with some additions not relevant to this proceeding.

The requirement in Rule 755(b) that good cause be shown for setting aside a default judgment under Rule 924 apparently added nothing to the requirements of Federal Rule 60. Federal Rule 60 sets out the various good causes for relieving a party from a final judgment.

The parties have treated the defendants' first motion to set aside the default judgment as a motion under Rule 60(b)(1). It provides for relieving a party or his legal representative of a final judgment because of "mistake, inadvertence, surprise, or excusable neglect".

The defendants would have the court believe that they honestly expected the $500 fee paid to Martin Bean 18 months before the trustee sued them to be the total fee for defending the suit to recover $113,000. The court cannot believe this. The defendants are experienced in the world of business. The court believes that Martin Bean did mention the additional $2,000 fee long before the meeting with the defendants after the default judgment had been rendered. However, Martin Bean could not say that he ever made it clear to the defendants that the $2,000 had to be paid in advance of his doing anything. The defendants could have believed that Martin Bean was representing them but that they owed him $2,000 to be paid in the future. This kind of fee arrangement is common with clients whose ability to pay when the time comes is almost beyond doubt. The court does not know whether the defendants are in that category or not. In any event, the defendants may have been justified in believing that a lawyer who had already been paid $500 for minimal work would represent them in a later, related suit without payment of an additional fee *in advance*. Giving the defendants the benefit of the doubt, the court concludes that they could justifiably have assumed that Martin Bean began representing them in this suit when they talked to him shortly after they received the complaint and summons. Furthermore, the proof does not show that Martin Bean did anything between then and the default judgment which would have made it clear to the defendants that he did not consider himself to be representing them. This distinguishes the case from cases such as *Claeys v. Moldenschardt*, 260 Iowa 36, 148 N.W.2d 479 (1967) and *In re Aston's Trust*, 245 So.2d 674 (Fla.App.1971).

A defendant's reasonable mistake in believing a lawyer is representing him does not mean that the defendant's failure to defend is automatically excusable. The defendant's own neglect may still be too great to overlook. In early October, the defendants received the complaint and a summons to answer within 30 days. The default judgment was rendered in mid-March. The defendants had to know that during this period Martin Bean had not requested any information for an answer. A person facing a suit for $113,000 should not casually accept the assurances of his lawyer that there is plenty of time to answer, when he knows the lawyer hasn't done anything toward preparing an answer and the due date has long since passed. The court, however, should not be too quick to saddle a defendant with a large default judgment because he believed his lawyer's assurances. A person unfamiliar with le-

gal proceedings may be excused for accepting his lawyer's assurances, in light of the lawyer's presumed experience and expertise and the common perception that lawsuits move at a glacial pace. The proof did not show that the defendants were familiar enough with legal proceedings to think that the delay in filing an answer was seriously abnormal. Even by the standards of local bankruptcy practice, the time between the answer due date (early November) and the default judgment (mid-March) was not too long a period for the defendants to reasonably rely on Martin Bean's assurances and not make an independent effort to defend. Furthermore, the defendants did not totally ignore the litigation but talked to or tried to talk to Martin Bean on a regular basis. The defendants' neglect may have been excusable, so that the original motion to vacate the default judgment would have been granted, *if it had been pursued.* The defendants' real problem is their failure to pursue the original motion to set aside the default judgment.

The second motion is based on Rule 60(b)(6). Unlike Rule 60(b)(1), Rule 60(b)(6) allows relief to be granted even though the motion was filed more than a year after the judgment was entered.

Rule 60(b)(6) is a catch-all provision. It allows a party to obtain relief from a final judgment "for any other reason justifying relief". Use of the word "other" appears to mean that neglect by a party's attorney cannot be a ground for relief under 60(b)(6) because neglect is covered by 60(b)(1). Nevertheless, the courts have held that gross neglect by an attorney, as opposed to excusable neglect, may justify relief under 60(b)(6). *Boughner v. Sec'y of Health, Education & Welfare,* 572 F.2d 976 (3d Cir. 1978); *Jackson v. Washington Monthly Co.,* 569 F.2d 119 (D.C.Cir.1977); *L.P. Steuart, Inc. v. Matthews,* 329 F.2d 234 (D.C. Cir.1961). These decisions recognize the tendency of clients to accept their lawyers' assurances when the lawyers are in fact totally ignoring their cases.

■ The defendants' argue that Martin Bean's gross neglect caused the first motion not to be pursued, and therefore, the

first motion should be treated as still viable and should be granted. Essentially the same problem arose in *Chang v. Smith,* 778 F.2d 83 (1st Cir.1985). In that case the court did not have to consider the argument under Rule 60(b)(6) because it concluded that the earlier motion under Rule 60(b)(1) should be denied anyway. In this case the court must consider the Rule 60(b)(6) argument because the earlier Rule 60(b)(1) motion may have been granted if it had been pursued.

In cases involving an attorney's gross neglect as a ground for relief under Rule 60(b)(6), the courts generally have held that the client must have been diligent in keeping up with the lawsuit. *Inryco, Inc. v. Metropolitan Engineering Co.,* 708 F.2d 1225 (7th Cir.1983); *U.S. v. Cirami,* 535 F.2d 736 (2d Cir.1976) and on appeal after remand, 563 F.2d 26 (2d Cir.1977); *Ben Sager Chemicals Intern., Inc. v. E. Targosz Co.,* 560 F.2d 805 (7th Cir.1977).

The defendants knew that they had been ordered to submit affidavits in support of their first motion but they never executed any affidavits. They could easily have set up an appointment with Martin Bean to have the affidavits executed. Representation by a lawyer does not mean that the client must always wait on the lawyer to take the first step toward getting work done. A lot of legal work would probably go unattended if this were a rule.

The defendants would have the court hold that they were sufficiently diligent in light of their reasonable reliance on Martin Bean's assurances that everything was being taken care of. The court does not believe that Martin Bean ever told the defendants that Mr. Robertson's written but unsworn narrative of the facts would substitute for their sworn affidavits. It is more likely that he said he could use it to draft an answer. Moreover, the defendants should have known better. Mr. Robertson admitted knowing the difference between an affidavit and a letter. The defendants had already had trouble with Martin Bean not doing what they thought he was supposed to do, but they let two years pass without executing affidavits and with-

out checking with the court to see if the default judgment had been set aside. This inaction appears to have continued long after Martin Bean stopped making assurances about the case. Furthermore, even though the defendants apparently were not overly familiar with legal proceedings, they were businessmen and knew or should have known that they could not let a judgment for $113,000 or a suit for that amount simply linger for years without finding out for themselves what was happening, especially since they already had reason to doubt their lawyer's ability and he had ceased talking to them. In these circumstances, the defendants' own lack of diligence cannot be justified on the ground that they reasonably relied on their lawyer's assurances. Because the defendants were not diligent, gross neglect by their lawyer does not warrant relief under Rule 60(b)(6). *Inryco, Inc. v. Metropolitan Engineering Co.*, 708 F.2d 1225 (7th Cir.1983); *Ben Sager Chemicals Intern., Inc. v. E. Targosz & Co.*, 560 F.2d 805 (7th Cir.1977).

Since relief under the second motion based on Rule 60(b)(6) must be denied, the first motion must also be denied because of the defendant's failure to pursue it.

There are other facts that the courts consider in determining whether to grant a motion for relief from the judgment.

The court has assumed that the defendants have a meritorious defense. There is evidence in the record, but not recounted in the findings of fact, sufficient to show a meritorious defense under the standard set out *United Coin Meter Co. v. Seaboard Coastline Railroad*, 705 F.2d 839, 845 (6th Cir.1983).

As to prejudice to the trustee if the judgment is set aside, there was no testimony. The lawyers made representations in open court and argued concerning a missing witness. The witness, David Jones, was the principal in the debtor corporation. The defendants' lawyer argued that Mr. Jones' testimony in a Rule 205 examination was sufficient. The trustee's lawyer disagreed, saying that Mr. Jones' testimony only hit the highpoints and the questioning was not focused on the particular transactions in-volved in this lawsuit. The court was left unsure as to when the witness disappeared. The trustee's lawyer said that he stayed around until the trustee had sold all the property and collected all the money he could. This should have been before the final meeting, which would mean that the witness disappeared between the filing of the first motion and the final meeting. The trustee was prejudiced by the defendants' failure to pursue the first motion, if this was the true sequence of events. The court, however, need not decide since the defendants' lack of diligence is reason enough to deny both motions.

The court has looked at the defendants closely. They sought free legal advice from a judge and a lawyer in their home state. The court believes their failure to pay their lawyer was simply their way of doing business. Their lack of diligence cannot be excused. The court feels comfortable in denying their motions.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.