**VAC–AIR, INC., Plaintiff-Appellee,**

**v.**

**JOHN MOHR & SONS, INC., Defendant-Appellant.**

**No. 71–1880.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 12, 1972.

Decided Jan. 4, 1973.

Ray T. McCann, Richard A. McDermott, Milwaukee, Wis., John H. Bishop, William J. Hallinan, James G. Staples, Chicago, Ill., for defendant-appellant.

Ronald E. Barry, Milwaukee, Wis., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and CUMMINGS and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

This appeal requires us to draw the ever-troublesome line between the right on the one hand of a litigant to a determination of his claim or defense upon the merits despite the incompetency or lack of diligence of his attorney and the necessity on the other hand of the trial judge to control and manage litigation which threatens unduly to burden the court as a result of the attorney's failings.

On September 4, 1970, the plaintiff, Vac-Air, Inc., filed a two-count complaint against the defendant, John Mohr & Sons, Inc. Count I charged infringement by defendant of Patent No. 3,527,018, issued to Vac-Air on September 8, 1970, as assignee of Donald E. Jahnke. Count II charged common law unfair competition in that the defendant allegedly obtained a copy of the patent application about October 1, 1968, while negotiating for its purchase from Vac-Air and copied the "lifter" invention embodied therein. The complaint prayed for (1) a preliminary and permanent injunction against further infringement; (2) an accounting for damages under Count II; and (3) an award of attorneys' fees as an exceptional case under 35 U.S.C. § 285.

Vac-Air moved for a judgment by default on November 4, 1970, at which time defendant had failed to answer or otherwise plead as required to do by October 20. The motion was heard by the district court on November 19, at which time Keith J. Kulie appeared as the attorney for the defendant and orally pleaded that he was a sole practitioner in Chicago who had simply neglected to file an answer or other pleading or a timely motion for an extension. He also mentioned to the court that "the significance of the answer may be changed as a result of the action which is pending in the State Court in Waukesha . . . involving the issue of title to the invention that's disclosed and claimed in the patent here in suit."

The facts of the state court case referred to are disclosed in an opinion by the Supreme Court of Wisconsin in John Mohr & Sons, Inc. v. Jahnke, 55 Wis.2d 402, 198 N.W.2d 363 (1972), where it appears that Jahnke was employed by Hydrahone, which was purchased by Mohr in 1962. In 1964, Jahnke executed an employment contract with Mohr providing that Mohr was to be the owner of any invention Jahnke "made" during his employment which related to Mohr's business. Jahnke terminated his employment with Mohr on June 30, 1968. Jahnke organized Vac-Air in July and filed his application for Patent No. 3,527,018 on October 21, 1968.

In the state court case, Mohr had sued Jahnke and Vac-Air for specific performance of Jahnke's contract with Mohr to assign any patent by Jahnke relating to an invention made during his employment. Jahnke and Vac-Air counterclaimed for conspiracy by Mohr and some of its officers in restraint of trade under the Wisconsin antitrust law.

At the hearing of the motion for judgment by default in the federal district court, the judge concluded that although "it's just been sheer neglect, and I think the Plaintiff should have his default judgment, . . . I will provide that the judgment . . . will be vacated upon . . . $200 being paid, to include both costs and attorneys' fees."

A week later, the $200 was paid to the plaintiff and the appearance of Mr. Kulie and the answer and counterclaim of defendant Mohr were filed. The answer and counterclaim alleged that (1) Patent No. 3,527,018 was invalid as not satisfying the conditions for patentability set forth in 35 U.S.C. §§ 102 and 103; (2) Jahnke violated a 1962 agreement with Hydrahone that he would not compete while employed; (3) Jahnke violated a 1964 agreement with Mohr that "all inventions and improvements that I may make" during employment relating to Mohr's business "shall be the sole property" of Mohr; (4) Jahnke invented the

device disclosed in Patent No. 3,527,018 while employed by Mohr; and (5) Jahnke began to compete with Mohr shortly after termination of his employment with Mohr in June 1968, by organizing Vac-Air. Mohr prayed that Vac-Air's complaint be dismissed, that Patent No. 3,527,018 be declared null and void, that the patent rights be transferred to Mohr and that Jahnke be enjoined from further competitive activity with Mohr.

At a status report in the district court on February 4, 1971, attorneys for both Vac-Air and Mohr conceded that the issues raised by Mohr's counterclaim were also at issue in the state court case which remained pending. On March 2, 1971, Joseph A. Gemignani filed an appearance for Mohr in addition to that of Mr. Kulie.

On March 4, 1971, Vac-Air served written interrogatories upon Mohr with answers due in 30 days. On April 14, Vac-Air moved for a judgment by default for failure to answer the interrogatories.

On June 14, 1971, the district judge, 52 F.R.D. 508, without hearing entered a default judgment in favor of Vac-Air and against Mohr, permanently enjoined Mohr from violating Patent No. 3,527,018, and ordered an ex parte hearing to determine plaintiff's damages.

In the meanwhile, in the state court case a jury had rendered a verdict upon which judgment had been entered (1) that Jahnke did not "make" the device while in Mohr's employment, (2) that Mohr and its officers wrongfully conspired to restrain competition by Jahnke and Vac-Air in the sale of vacuum lifters to the poultry packaging industry, (3) that there was malice on the part of Mohr, and (4) that Vac-Air's compensatory damages were $35,000. The jury also assessed punitive damages in the amount of $25,000 but the trial court reduced those to $500 and the Wisconsin Supreme Court denied punitive damages completely. However, the state trial court trebled the compensatory damages under Wisconsin law to $105,000 and further assessed Mohr with Vac-Air's attorneys' fees in the amount of $20,000. The Supreme Court ultimately affirmed the judgment for Vac-Air and against Mohr for a total of $125,000. John Mohr & Sons, Inc. v. Jahnke, *supra*, 198 N.W.2d at 367.

Without any further notice to Mohr, an ex parte hearing was held before the federal district court, during which hearing evidence of alleged damages was presented. On July 6, 1971, the court entered a permanent injunction enjoining Mohr from infringing the patent and a judgment for Vac-Air against Mohr in the amount of $46,270.50 damages plus $148.08 costs and disbursements, or a total of $46,418.58.

The defendant Mohr moved to vacate the judgment on July 16, attaching a letter from a doctor who stated that Mr. Kulie had been under his care for the past year for severe anxiety state neurosis, hypertension and other ailments requiring sedation and other treatment and necessitating a reduction of his attention to practice, and an affidavit by Mr. Kulie to the same effect, which also pointed out that he was trying the state court case from June 10 to 16, at the very time the default order of June 14, 1971, was entered.

On August 31, the district court, 53 F.R.D. 319, denied Mohr's motion to vacate the judgment and this appeal followed.

In both of the district court's orders of June 14 and August 31, he based his default judgment on the defendant's failure to answer the complaint timely, defendant's failure to answer interrogatories in timely fashion, and defendant's failure to file a brief relating to Vac-Air's motion for default of April 14. In regard to the last, the district court docket sheet shows no order having been entered regarding briefs and does not show that Vac-Air filed a brief which the defendant was obliged to answer. Therefore we cannot assess the nature of that default, if there was one. The

failure to answer the complaint was followed by a $200 assessment of costs and attorneys' fees, which was paid, and the answer and counterclaim were filed. The answers to written interrogatories, the third ground upon which the default judgment was based, were ultimately submitted one month after they were due. Prior to the default judgment, no order was entered by the district court compelling answers as suggested by Fed.R.Civ.P. Rule 37(a) and (b), but not required by Rule 37(d).

In Sapiro v. Hartford Fire Insurance Co., 452 F.2d 215, 216 (7th Cir. 1971), decided after the district court acted in the present case, we pointed out, quoting from other authorities, that the extreme sanction of default or dismissal must be tempered by the careful exercise of judicial discretion to assure that its imposition is merited, and that where an alternative, less drastic, sanction would be just as effective it should be utilized.

█ It is established by the record that Mohr's principal attorney in this case was suffering from health problems and was trying another substantial case between the same parties when he was required to act on behalf of his client in this case. Nevertheless, we do not condone counsel's failures and we note that, in addition to Mr. Kulie, a local counsel had appeared for Mohr and had some responsibility for moving the case in a timely and orderly fashion. We conclude, however, as in *Sapiro*, that "while not approving the apparent lack of diligent attention, we are of the opinion that the imposition of the particular sanction was too harsh under the circumstances here presented and judicial discretion should have indicated other less extreme initial steps to accomplish the result of compliance with the order to answer interrogatories." 452 F.2d at 217. See also, Scarver v. Allen, 457 F. 2d 308, 310 (7th Cir. 1972), where we said:

"We recognize that a somewhat delicate balance exists between the necessity for a trial judge to exercise control and management over his courtroom and docket, and litigants' substantial rights which may from time to time suffer as a result of this acknowledged need."

We conclude therefore that the sanction of default was too harsh and that the default judgment should be vacated.

The defendant has argued that the damages of some $46,000 assessed in the ex parte hearing are duplicative at least in part of the damages awarded in the state court case. In view of the fact that we are vacating the default judgment, the district court on remand can, if it again reaches the question of damages, supervise the evidence pertaining to damages in such a way as to insure that damages for the same act or transaction are not duplicated.

█ The judgment of July 6, 1971, is vacated and the case remanded for further proceedings.[1] Costs of this appeal are assessed, however, against the appellant.

Reversed and remanded.

---

1. Vac-Air argued that the notice of appeal, filed within 30 days (F.R.A.P. 4) of the August 31, 1971, denial of the motion to vacate but not within 30 days of the July 6, 1971, judgment, was not timely inasmuch as F.R.Civ.P. 55(c) provides for setting aside defaults under 60(b), which in turn provides that a motion thereunder does not affect the finality of a judgment. However, the district judge did not receive the affidavits of counsel's medical condition and involvement in the state case until the motion to vacate was made under F.R.Civ.P. 59(e). The notice of appeal was timely filed either because a timely motion under that rule suspends the time for appeal or because our vacation of the judgment is based on the court's abuse of discretion in denying the motion to vacate after receipt of the exculpatory evidence.