Anthony R. BIEGANEK and Marie B. Bieganek, Plaintiffs-Appellees,

v.

Harry TAYLOR, Defendant-Appellant.

No. 86–1060.

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1986.

Decided Aug. 29, 1986.

James E. Beckley, Chicago, Ill., for defendant-appellant.

Kathryn S. Mueller, Chicago, Ill., for plaintiffs-appellees.

Before CUMMINGS, Chief Judge, and WOOD and FLAUM, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant, Harry Taylor, appeals the refusal of the district court to set aside a default judgment entered against him. Before reaching the merits of the default issue we must consider a jurisdictional question concerning the certification of the default under Fed.R.Civ.P. 54(b).

*Background*

On December 21, 1984, plaintiffs filed their complaint, which they amended on January 2, 1985, against appellant, Harry Taylor, and other business entities and individuals alleging fraud in connection with commodities futures transactions, generally described as churning, misrepresentations and other types of fraudulent investment conduct. Specifically, plaintiffs alleged violations of rules promulgated under the Commodity Exchange Act, 7 U.S.C. §§ 1–26 (1982), and also asserted a claim under the civil damages provision of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, along with various pendent state-law claims for common law conversion and fraud.

Taylor at the time suit was filed resided in Florida. An affidavit of a special process server states that Taylor was personally served in Florida on January 3, 1985, but some uncertainty exists because one of plaintiffs' counsel alleged in connection with the default proceedings that personal service was made on January 31, 1985.

That, however, is likely plaintiffs' counsel's mistake as it is conceded that on or about January 11, 1985, Taylor, who is a British citizen, left the United States and permanently moved to Spain in accordance with prior plans. Later plaintiffs claim that personal service on Taylor occurred instead on January 5, 1985. In any event, it is clear that Taylor was served by mail on January 10, 1985, as he acknowledged that service in writing. Within the week prior to his leaving for Europe, service was sufficiently made on Taylor. The issue is what Taylor did or did not do after receiving notice of the suit.

Taylor's affidavit claims he did two things, both of which turned out to be insufficient. First, he says he contacted someone in one of the other business entities which was also a defendant, and thereafter was under "the impression" that the defendant company would protect Taylor's interests for him. That defendant company, however, did not. Taylor also claims that he prepared and mailed to the court an affidavit in response to and denying the allegations of the complaint. That affidavit, however, has not been found in the court files.

Thereafter, on March 19, 1985, no response having been received from Taylor, plaintiffs presented an *ex parte* motion for default judgment against Taylor, and the court orally entered default judgment. On April 2, 1985, the trial judge entered a minute order allowing plaintiffs' motion for entry of judgment by default against Taylor, as well as two other defendants not involved in this appeal, in the amount of $248,381.04. Plaintiffs were directed to submit a draft judgment order, but even the plaintiffs defaulted as apparently they did not draft and submit the draft order as directed by the court. Plaintiffs claim, however, that they mailed the draft to the court. Plaintiffs in that regard appear to have had a problem similar to Taylor's claimed mailing of his affidavit. The entry of the judgment order was not accomplished until Taylor's motion to vacate the default came on for consideration and then the judgment was entered *nunc pro tunc* as of April 12, 1985.

Taylor claims he first learned of the default about July 31, 1985, when he received a letter from an attorney for another defendant. This was about seven months after Taylor had received notice of the litigation. Taylor says that he immediately made arrangements to be represented by counsel in an effort to set aside the default. His motion under Fed.R.Civ.P. 60(b)(1) was filed on August 22, 1985, and sought to vacate the default on the basis of excusable neglect.

In a memorandum opinion and order entered on October 15, 1985, Judge Aspen considered the facts and circumstances of the default, and citing this circuit's opinion in *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202 (1984), concluded that Taylor's neglect was not excusable and denied the motion to vacate. Thereafter Taylor filed a motion to reconsider which was also denied. On November 14, 1985, Taylor filed a notice of appeal. After this court suggested its lack of jurisdiction, Taylor voluntarily dismissed his first appeal and returned to the district court seeking certification of the October 15, 1985 order for interlocutory appeal. On January 7, 1986, the district court certified its default order under Fed.R.Civ.P. 54(b) by making the express determination that there was no just reason for delay and expressly directing the entry of judgment.

## Analysis

### A. Jurisdiction

■ The plaintiffs argue that this is an appeal from an interlocutory order which should be dismissed for lack of jurisdiction. That argument is based on the premise that the October 15, 1985 default order was not certifiable under Rule 54(b) because it did not qualify as a "judgment." Plaintiffs, however, concede that the original *ex parte* default minute order of April 12, 1985, would have been the proper subject of a Rule 54(b) certification. Plaintiffs rely on *McKinney v. Gannett Co.*, 694 F.2d 1240, 1247 (10th Cir.1982). *McKinney*

notes the necessity of strict adherence to the final judgment rule, stating that if there is a jurisdictional defect it cannot be cured simply by a Rule 54(b) certification. We know of no court which quarrels with that general principle, but *McKinney* applied that reasoning to a finding of liability only, with damages or other relief yet to be determined. The appeal therefore was dismissed. We do not have such a clear-cut case.

What we have jurisdictionally is an appeal from an adverse ruling on a Rule 60(b) motion to vacate a default judgment. Because that ruling left other parties in the litigation with pending claims, the adverse ruling was not appealable unless certified under Rule 54(b), and it was. We have already plainly held that denial of a Rule 60(b) motion is itself an appealable judgment, even when the thirty-day time under Fed.R.App.P. 4(a)(1) for appealing the underlying default judgment has expired. *Inryco, Inc. v. Metropolitan Engineering Co.*, 708 F.2d 1225, 1232 (7th Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 347, 78 L.Ed.2d 313 (1983). Even if the original default order of April 12, 1985, could have been timely certified as suggested by plaintiffs, it would leave this court in the difficult position of trying to review the default order without having before it the claims of Taylor's 60(b)(1) motion or having the benefit of the district judge's view after the opportunity to reconsider his own default order. We accept jurisdiction.

### The Default Judgment

■ We begin consideration of the merits by reiterating our view enunciated in *Inryco*, 708 F.2d at 1232, that "default judgments are not favored by modern courts." The district judge expressed it well when he stated that he was "aware of the precious balance which must be stricken between the policy favoring litigation on the merits and the need to promote efficiency in the administration of justice and avoid prejudice to parties who have conducted themselves responsibly." The district judge also considered this court's com-

ments in *C.K.S. Engineers*, 726 F.2d at 1206, that "[i]n order for the default judgment to be an effective deterrent against irresponsible conduct in litigation, relief from default judgment under Rule 60(b) must be perceived as an exceptional remedy." In *C.K.S. Engineers* it was, however, added "that defaults should be entered only when absolutely necessary, such as where less drastic sanctions have proven unavailing." *Id.* We also noted in *C.K.S. Engineers* that "these decisions are subject to an abuse of discretion standard, but this discretion of the district court on these matters is not unbounded." *Id.* In *Inryco*, 708 F.2d at 1234, we referred to *Boughner v. Secretary of Health, Education and Welfare*, 572 F.2d 976, 978–979 (3d Cir.1978). In *Boughner* the court found no Rule 60(b)(1) excusable neglect, as it found the attorney's neglect so gross as to be inexcusable. The court then applied Rule 60(b)(6), which permits vacating a judgment "for any other reason justifying relief," and set aside the default. We need not, however, invoke 60(b)(6) in this case, but the *Boughner* court's summary is well stated:

> [W]e are not unmindful of the need for judicial eagerness to expedite cases, to fully utilize the court's time, to reduce overcrowded calendars and to establish finality of judgments. However, these commendable aspirations should never be used to thwart the objectives of the blind goddess.

The charges in the complaint are substantial and include a RICO count. The default judgment entered is in excess of $250,000. The size of the judgment is not controlling, but it deserves to be considered, particularly where, as here, under RICO actual damages are to be trebled and attorney's fees added. *C.K.S. Engineers*, 726 F.2d at 1208. Taylor also filed an affidavit in which he disclaims any liability, factually disputes many of plaintiffs' allegations, and claims to have a meritorious defense to each of plaintiffs' claims.

Taylor for instance denies any connection with the plaintiffs' commodities trading ex-

cept that he introduced plaintiffs to one of the other parties. He denies that he received any compensation for this introduction. He also denies he induced plaintiffs to invest and denies that he was an employee or agent of any of the other defendants. He further denies that he had any control over the funds invested by plaintiffs. Taylor's actual likelihood of prevailing on his defenses is not the measure of whether he has a meritorious defense, which is one element to be considered in vacating a default. *United Coin Meter Co. v. Seaboard Coastline Railroad*, 705 F.2d 839, 845 (6th Cir.1983). A defense is meritorious if it is good at law so as to give the factfinder some determination to make. Whether Taylor states the truth in his denials of any substantial connection with or responsibility for the alleged fraud is not for this court to determine.

We note that initially when there was no response forthcoming from Taylor the plaintiffs did not inquire, by mail or otherwise, about Taylor's intentions, nor did they raise the question with any other defendant with whom they claim he was associated. They proceeded only with the *ex parte* accomplishment of default. In many ordinary cases resulting in default judgments, the defaulted parties were given various chances and warned; but, when they persisted in being unresponsive, they were then properly defaulted. The present case is not such a clear example of a continuing disregard for the litigation. *Inryco*, 708 F.2d at 1228. Plaintiffs themselves were likewise guilty of a default of some nature when they ignored the trial court's order to prepare and submit a draft of the default judgment they seek now to enforce.

There is nothing in the record to show that Taylor deliberately and wilfully defied the court or disregarded the litigation. When wilfulness is clearly apparent, the liberal attitude of vacating default judgments is sharply modified. *Textile Banking Co. v. Rentschler*, 657 F.2d 844, 854 (7th Cir.1981). At most in this case it was neglect—excusable under the circumstances—mistake, inadvertence or possibly a misunderstanding that someone would pur-portedly handle Taylor's interests. In regard to the claimed mailing of the responsive affidavit to the court, possibly it could have been a failure of the mail, or even negligence in the clerk's office. Even the plaintiffs themselves had a similar problem as they also claim they sent a draft of their default judgment to the court which, along with Taylor's affidavit, does not appear in the record.

Taylor was not an American citizen and was shortly leaving this country permanently to reside in Europe according to prior plans. It is not suggested that Taylor's leaving was to avoid suit or its consequences. For Taylor to ignore the suit deliberately could only result in a default judgment which would not be vacated. When Taylor belatedly found out what had happened, he did retain counsel promptly and tried to make up for whatever had happened. No great amount of time elapsed between April 1985 when the default order was entered and August 1985 when Taylor moved to vacate the default. Since then Taylor has demonstrated considerable interest in being permitted to try this case on the merits.

The parties tell us that the litigation is still pending as to the remaining defendants. At time of oral argument discovery had not yet been completed. To set Taylor back into this case, which has yet to be tried, should not cause undue hardship. Were the other defendants to be acquitted of all the charges at trial and yet this default judgment be permitted to remain against Taylor, great unfairness, not justified by the reasons for sustaining the default, could possibly result. When it appears, as here, that there is a genuine dispute concerning material facts, it weighs in favor of a trial to decide those factual disputes in preference to judgment by default in which facts cannot be disputed and decided. *Ellingsworth v. Chrysler*, 665 F.2d 180, 185 (7th Cir.1981); *Newberry v. Cohen*, 374 F.2d 320, 323 (D.C.Cir.1967).

We do not defend Taylor's handling of his case, but we do defend his right to a

trial on the merits if his neglect is excusable. Considering all these circumstances we must find an abuse of discretion by the trial judge in declining to set aside the default, but we do so without intending any criticism of the trial judge. We believe, however, that the purposes of entering a default judgment in these circumstances do not justify the possible harshness of the result. Taylor's neglect should be excused, but not without a price.

Taylor shall pay the costs of this appeal including reasonable attorneys' fees for plaintiffs, and the district court on remand may, in its discretion, impose additional other reasonable sanctions for the impact of Taylor's excusable neglect in that court. Further neglect by Taylor will not be tolerated.

The default judgment is vacated and the cause is remanded for further proceedings in conformity with this opinion. Circuit Rule 18 shall not apply. All costs to appellant.