**ANILINA FABRIQUE de COLORANTS, a Belgian corporation, Plaintiff–Appellee,**

v.

**AAKASH CHEMICALS AND DYESTUFFS, INC., an Illinois corporation, Defendants–Appellants.**

**No. 87–2599.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1988.

Decided Aug. 31, 1988.

As Amended Sept. 15, 1988.

---

Thomas C. Dudgeon, Arthur G. Jaros, Jr., Richter & Jaros, Oak Brook, Ill., for defendants-appellants.

Marvin A. Miller, Patrick E. Cafferty, Washlow Chertow & Miller, Chicago, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

Aakash Chemicals and Dyestuffs, Inc., appeals from the default judgment against it and the denial of its motion to vacate the default.

BACKGROUND

Anilina Fabrique de Colorants filed this diversity suit[1] against Aakash on April 10, 1986 claiming that Aakash owed it over $18,000 for goods which had been shipped to but had not been paid for by Aakash. At a court-ordered status hearing in July, the parties notified the judge that they were attempting to negotiate a settlement. Aakash's counsel also informed the court that the exhibits attached to the complaint were not sufficient to verify the accuracy of Anilina's claim and that Aakash might bring counterclaims.

At an October 29 status hearing, Anilina's counsel advised the court that negotiations were continuing but were complicated by the fact that Anilina was located in Belgium and it was therefore difficult to schedule meetings and conference calls be-

1. Anilina's principal place of business is in Belgium, while Aakash's is in Illinois.

tween the parties and their principals. The court set another status hearing for November. When a scheduled conference between the parties could not be held, the court, at the request of both parties, rescheduled the hearing to December.

In December, the court set the case for trial on March 5, 1987, after the parties agreed that negotiations had broken down. Both parties indicated that discovery would be necessary. Aakash advised the court that it had not yet filed its answer or any counterclaims because of the negotiations. Late in January, at Aakash's request, its counsel sought and was granted leave to withdraw. Acting without counsel, Aakash continued to communicate with Anilina in efforts to resolve the dispute.

On the scheduled March 5 trial date, Anilina sought entry of default against Aakash, citing its failure to file an answer or other responsive pleading. Aakash claims, and Anilina does not dispute, that prior notice of the motion for default judgment was not given to Aakash and that it never received copies of Anilina's motion and supporting affidavits. An officer of Aakash appeared and requested additional time to obtain counsel. The court granted Aakash until March 17 to "either try to get a lawyer in here to try to persuade me to continue this case, and that's very uphill, or to settle the case." The judge warned Aakash that it was "headed for a default judgment." At the same time, Anilina's counsel expressed his concern that his client would not have sufficient time to make arrangements to travel from Belgium for the trial. The court stated, "There is no way [Aakash] can go to trial [on March 17]" and later, "... I wouldn't bring your client in from Belgium. There can't be a

trial." At the close of the hearing, the court reiterated to Aakash's officer that it had "to have a lawyer either come in and try to persuade me to give more time to you, or you have to settle this case." The court's minute order, however, indicates that trial had been reset to March 17. Notices were not sent to the parties. Anilina concedes on appeal that it was clear on March 5 that the case would not go to trial on March 17.

Aakash retained counsel who appeared on its behalf at the March 17 hearing. Counsel requested a continuance, indicating that he had been retained the previous day, had been unable to contact opposing counsel, and had not had an opportunity to review the court file or the files of Aakash's prior attorney. The court indicated to Aakash's new counsel that the case was set for trial that morning.[2] Counsel nonetheless asked for a continuance, indicating that Aakash desired to file an answer. Counsel further indicated that the complaint was insufficient because the transactions referred to were not set out in separate counts, calling specific paragraphs of the complaint to the court's attention. At the close of the hearing, the court entered a default judgment, commenting that it would be unfair to the plaintiff to grant another continuance "on the morning of trial" and that the case was a "collection case for $18,000." Although at one point the court expressed the view that Aakash was stalling, the court also stated, "I don't know of any defenses to these claims," and instructed counsel that he had "10 days in which to file a motion to ask me to set it aside.... And what your burden is on asking me to set it aside is to show me that you have a good and meritorious defense."

---

2. MR. JAROS [Counsel for Aakash]: Your honor, I was retained yesterday afternoon by Aakash Chemicals. He indicated that there was something set for today.
THE COURT: Trial.
\* \* \* \* \* \*
THE COURT: I told your client, after giving them a lot of time, after they terminated their relationship with their previous lawyer, that I was giving them this time so that they could find a lawyer, so that that lawyer could come in and make a case for a continuance.

Now, it doesn't help me at all to have you stand up here on the morning of trial and say, I was retained last night, give me a continuance....
\* \* \* \* \* \*
THE COURT: .... I then reset the trial date to the 5th when someone came in, some—the wife of the principal of the defendant appeared on March 5th and at that time I set the trial over for two more weeks to give her an opportunity to find a lawyer.

The default judgment was entered on March 19, 1987.

Within ten days, Aakash filed a motion, purporting to be brought under Rules 59(e), 55(c), and 60(b)(6) of the Federal Rules of Civil Procedure, seeking to vacate the default judgment. Aakash also sought leave to file its answer and counterclaims as well as a motion for a more definite statement pursuant to Rule 12(e). Along with the motion, Aakash tendered to the court a verified answer and counterclaim and the affidavit of Aakash's president Satish Shah. The motion, answer, and counterclaims set out Aakash's defenses to Anilina's claims. The affidavit revealed that Shah was unaware until counsel withdrew in January that his prior counsel had still failed to file an answer to the complaint.[3] In support of his statement that Aakash had not hindered or delayed Anilina, Mr. Shah tendered copies of telexes Aakash had sent to Anilina in January and February which looked for a resolution of the dispute.

On September 2, 1987, the court denied Aakash's motion to vacate the default judgment. The court relied heavily on the fact that no answer had ever been filed and that Aakash was not prepared to go forward on March 17 when its new counsel appeared, maintaining that "[t]he court and the plaintiff were prepared to go forward." The order denying Aakash's motion makes no mention of Mr. Shah's affidavit in which he indicated that he was unaware that an answer had not been filed.[4] The order also makes no mention of the defenses raised by Aakash in its proposed answer and counterclaim. Aakash timely filed its notice of appeal on October 2, 1987.

DISCUSSION

A. *Jurisdiction.*

■ Aakash's motion seeking to vacate the default was purportedly brought under Rules 59(e), 55(c), and 60(b)(6). This characterization is misleading. *See Chrysler Credit Corp. v. Macino,* 710 F.2d 363, 364–65 n. 1 (7th Cir.1983) (distinguishing motions under Rules 55, 59, and 60(b)).[5] The rule in this circuit is "that all substantive motions served within 10 days of the entry of a judgment will be treated as based on Rule 59, and therefore as tolling the time for appeal." *Charles v. Daley,* 799 F.2d 343, 347 (7th Cir.1986) (citing *Harcon Barge Co. v. D & G Boat Rentals, Inc.,* 784 F.2d 665 (5th Cir.1986) (en banc)). Thus, the October 2 notice of appeal, filed within 30 days of the denial of Aakash's post judgment motion, is timely as to the March 19 judgment of default as well as the denial of the motion itself. Fed.R.App. P. 4(a)(1) and (4). *See, e.g., Vac–Air, Inc. v. John Mohr & Sons, Inc.,* 471 F.2d 231, 234 n. 1 (7th Cir.1973); *cf. Ellingsworth v. Chrysler,* 665 F.2d 180, 183 (7th Cir.1981) (citing *Browder v. Director, Illinois Dept. of Corrections,* 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978)).

B. *Standard of Review.*

On a direct appeal from the entry of a default judgment, a district court's decision is reviewed for abuse of discretion. *Chrysler Credit Corp.,* 710 F.2d at 637; *see also In re Kilgus,* 811 F.2d 1112, 1118 (7th Cir.1987). Similarly, "[a] district court's denial of a Rule 60(b) motion to vacate a default judgment is subject to review only for abuse of discretion." *Hal Commodity Cycles Management Co. v. Kirsh,* 825 F.2d 1136, 1138 (7th Cir.1987) (citing *Tolliver v.*

---

3. Anilina contends that Mr. Shah's affidavit is contradicted by a letter from Aakash's prior counsel to Mr. Shah. The December letter advised Mr. Shah that an answer to the complaint had yet to be filed.

4. The court's order indicates Aakash was warned at least three times to file its answer. The order specifically cites two warnings given to Aakash when represented by its former counsel and one warning which the court advised former counsel to convey to Aakash.

5. Rule 55 provides that after judgment has been entered, a default may be set aside "in accordance with Rule 60(b)," Fed.R.Civ.P. 55(c); thus Rule 60(b) controls motions in which relief from a judgment or order may be sought. *North Central Illinois Laborers' District Council v. S.J. Groves & Sons Co.,* 842 F.2d 164, 166 n. 3 (7th Cir.1988); *see also Marshall v. Boyd,* 658 F.2d 552 (8th Cir.1981) (construing timely filed Rule 59 motion as brought pursuant to Rule 60(b)(6)).

*Northrop Corp.*, 786 F.2d 316, 318–19 (7th Cir.1986), and *Inryco, Inc. v. Metropolitan Engineering Co.*, 708 F.2d 1225, 1230 (7th Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 347, 78 L.Ed.2d 313 (1983)). This circuit has acknowledged some movement away from the traditional position strongly disfavoring default judgments, as well as an increasing reluctance to set them aside. *See Dimmitt & Owens Financial, Inc. v. United States*, 787 F.2d 1186, 1192 (7th Cir.1987). However,

> a district court's refusal to set aside a default or vacate a default judgment as a practical matter may not be insulated from appellate review. It is true that these decisions are subject to an abuse of discretion standard, but this discretion of the district court on these matters is not unbounded; a district court abuses its discretion when it enters a default in inappropriate circumstances and then fails to set aside the default or vacate the default judgment.

*C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1206 (7th Cir. 1984).

### C. Lack of Notice of Default Judgment.

■ Aakash argues that the lack of notice of Anilina's application to the court for a default judgment requires that the default be set aside. In *North Central Illinois Laborers' District Council v. S.J. Groves & Sons Co.*, 842 F.2d 164 (7th Cir. 1988), decided after oral argument in this case, we considered the notice requirement of Federal Rule of Civil Procedure 55(b)(2). The rule requires that a party who "has appeared in the action" be given written notice three days before the hearing on the default judgment. Fed.R.Civ.P. 55(b)(2). In *North Central* we stated, "Failure to provide such notice is a serious procedural error, and absent special circumstances the lack of notice requires that the default be set aside." *North Central*, 842 F.2d at 168 (citing *Muniz v. Vidal*, 739 F.2d 699, 701 (1st Cir.1984)).

It is undisputed that Aakash never received notice of Anilina's motion for default judgment. Anilina does not argue that any "special circumstances" exist

which might relieve the requirement that the default be set aside. It does argue that "the default judgment in this case was not entered upon an application by Anilina. Rather, it was entered on the second date set for trial where Aakash could not proceed and no answer ... had yet been filed." We agree. While it is true that Anilina had filed a motion for a default judgment based on Aakash's failure to file an answer, the minute orders for the March 5 and 17 hearings indicate that the court was acting on its own motion. Neither minute order records the filing of Anilina's motion. The March 17 order states that the default judgment is being entered for the reasons stated in open court. Although the record could be clearer, our assessment of the court's actions is buttressed both by the reasons given by the judge in open court and the court's order denying the Rule 60(b) motion, neither of which refer to Anilina's motion, both of which emphasize Aakash's purported failure to be prepared for trial on March 17. We conclude that the notice requirement of Rule 55(b)(2) does not apply here. *See also Tolliver*, 786 F.2d at 318.

### D. Default Judgment.

■ As we have said, our jurisdiction over this appeal includes both the entry of default judgment and the refusal to set aside the default. "We first consider whether the judge abused [her] discretion in granting the default." *Chrysler Credit Corp.*, 710 F.2d at 367. We believe that the judge did abuse her discretion here by entering the default judgment in the absence of any bad faith or willfulness without first employing any lesser sanction.

First, it is true that Aakash had not answered the complaint and was not prepared to go to trial on the originally scheduled March 5 date, but this was due to the withdrawal of its attorney in late January. The court apparently "forgave" that default and gave Aakash additional time to obtain new counsel. In the court's own words, counsel's job on March 17 was to persuade it to grant Aakash another continuance before going to trial. While Aakash

admittedly did not immediately obtain a new lawyer, it was represented on March 17 and sought a continuance as the court directed, as well as seeking leave to answer the complaint, and leave to file a motion for a more definite statement. Yet the court consistently maintained that the trial was to have begun that morning and used counsel's unpreparedness to go to trial as a basis for the default. We understand the court's desire to encourage settlements and to maintain a current trial calendar. However, the fact that it was clear to all concerned on March 5 that the case would not go to trial on March 17 lends support to our conclusion that it was an abuse of discretion to enter a default judgment in these circumstances. *Compare Ellingsworth,* 665 F.2d at 182 (reversing denial of Rule 60(b) motion where defendant did not appear for trial where there was confusion about trial date).

Second, the court informed Aakash on March 5 that it faced default if it did not either get counsel and request a continuance or settle the case. Aakash obtained counsel who did appear and request a continuance. Aakash complied with the district court's instructions. *Compare Breuer Electric Mfg. Co. v. Toronado Systems of America, Inc.,* 687 F.2d 182, 187 (7th Cir.1982) ("[Defendants] were accorded several different opportunities ... to conform to the requirements of the Federal Rules of Civil Procedure, and they abjectly failed to do so on each occasion."). *See also Marshall v. Boyd,* 658 F.2d 552, 554 (8th Cir.1981) ("Ordinarily, a default judgment against a party who has appeared should not be entered unless the party has been put on notice that failure to act in a certain manner may subject him to sanction. [Citation.]"). Admittedly, Aakash's counsel was not prepared to go to trial; neither was Anilina. We are "hard pressed to call this default the sort of wilful, bad faith conduct that is the usual precursor of dismissal." *Tolliver,* 786 F.2d at 318 (citing *Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1095–96, 2 L.Ed.2d 1255 (1958)).

Additionally, the record reflects that the delay in bringing this case to trial was not caused solely by Aakash. The fact that Anilina is a Belgian corporation apparently delayed and prolonged settlement negotiations. On more than one occasion Anilina requested that status hearings be postponed so that settlement negotiations might proceed.

Finally, alternative, less drastic, yet effective sanctions were available. *Cf. Vac–Air,* 471 F.2d at 234. For example, the court might have required Aakash to pay Anilina's attorneys' fees in connection with the motion for default. On appeal, Anilina claims that lesser sanctions had proved unavailing. Anilina does not specify what these sanctions were and we have found no evidence that any lesser sanction was ever imposed or indeed considered by the court. Thus,

> '[W]hile not approving the apparent lack of diligent attention, we are of the opinion that the imposition of the particular sanction was too harsh under the circumstances here presented and judicial discretion should have indicated other less extreme initial steps....'

*Id.* (quoting *Sapiro v. Hartford Fire Ins. Co.,* 452 F.2d 215, 217 (7th Cir.1971)). We conclude that the court abused its discretion in entering the default judgment.

### E. *Motion to Vacate under Rule 60(b).*

Even if entry of default had not been *per se* an abuse of discretion, we find that the court did abuse its discretion in refusing to vacate the default judgment. Ordinarily, the district court's decision will "stand unless the judge was very far off base—if the judge relied on forbidden factors or omitted to consider some important relevant factor." *Tolliver,* 786 F.2d at 319, *quoted in Passarella v. Hilton International Co.,* 810 F.2d 674, 678 (Swygert, J., dissenting).

As we recently noted, a court faced with a Rule 60(b) motion must reconcile the competing interests of permitting a defaulting party to contest the merits of a dispute and enabling the court to deal with the practical requirements of judicial administration. *North Central,* 842 F.2d at 167. We also acknowledged this circuit's "well-estab-

lished policy favoring a trial on the merits over a default judgment." *Id.* (citing *Passarella,* 810 F.2d at 675). Although relief from a default judgment under Rule 60(b) must be perceived as an exceptional remedy in order for the sanction to retain its efficacy as a deterrent to the irresponsible conduct of litigation, *id.* (citing *C.K.S. Engineers,* 726 F.2d at 1206), "default judgments should generally be set aside where the moving party acts with reasonable promptness, alleges a meritorious defense to the action, and where the default has not been willful." *Passarella,* 810 F.2d at 675–76 (citations omitted); *Inryco,* 708 F.2d at 1230; *Matter of Busick,* 719 F.2d 922 (7th Cir.1983). "We have also observed, however, that the 'willfulness' of the defaulting party's actions is the 'common thread' which runs through our decisions, addressing Rule 60(b) motions to vacate default judgments." *North Central,* 842 F.2d at 167 (citing *C.K.S. Engineers,* 726 F.2d at 1205).

First, there is no dispute here that Aakash promptly sought to vacate the default. Its motion was filed within 10 days of the entry of the default judgment. Moreover, Aakash promptly attempted to cure its default by filing its proposed answer and counterclaims. *Cf. Tolliver,* 786 F.2d at 319 (it is rarely an abuse of discretion for district court to refuse to reinstate case under Rule 60(b) where defaulting party has not cured default).

Second, the court expressly instructed Aakash's counsel to focus on establishing a meritorious defense to the complaint.[6] Counsel's motion seeking to vacate the judgment did so, yet the court's order denying the motion is inexplicably silent on the question. Under the circumstances, we believe that the district court's failure to consider this relevant information constituted an abuse of discretion. *See Passarella,* 810 F.2d at 678 (Swygert, J., dissenting).

On appeal, Anilina contends that Aakash has failed to establish a meritorious defense, arguing that it merely denied the allegations of the complaint. We disagree. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Bieganek v. Taylor,* 801 F.2d 879, 882 (7th Cir.1986). The complaint alleged that Aakash owed Anilina money for several different shipments of goods. Although Aakash's proposed answer admitted liability for one shipment, it disputed the others. Exhibits attached to Aakash's proposed answer purport to document that some shipments allegedly accepted by it had actually been rejected and returned to Anilina. The complaint did not allege that Anilina was unable to resell the returned goods, thus Aakash has raised a meritorious defense to Anilina's action for the price under the Uniform Commercial Code, § 2–709. In addition to denying the allegations of the complaint, *cf. Bieganek* at 882, Aakash brought a counterclaim in excess of $16,000. The truth of Aakash's denials or the merit of its counterclaim is not for this court to determine. *Id.* While the existence of a meritorious defense, standing alone, would not justify relief under Rule 60(b), we believe the court's apparent failure to consider Aakash's defenses constitutes an abuse of discretion under these circumstances.

Third, the district court did not expressly find that Aakash's default had been willful. Despite Anilina's efforts on appeal so to characterize Aakash's actions, we do not agree. *Compare, e.g., Hal Commodity Cycles,* 825 F.2d at 1138 (noting express finding of willful default; record replete with dilatory conduct and lack of respect for orderly process of the court); *Coleman v. Smith,* 814 F.2d 1142, 1146 (7th Cir.1987) (default entered following what defaulting party conceded was "litany of discovery abuse perhaps unparalleled in the annals of civil litigation"); *Inryco,* 708 F.2d at 1231 (record "replete with inexcusable omissions, deceits, and irresponsibilities"); with *Bieganek,* 801 F.2d at 882 (nothing in record showed defendant "deliberately and willfully defied the court or disregarded the litigation"); *Ellingsworth,* 665 F.2d at

---

**6.** THE COURT: .... I'm going to enter a default judgment.... And you have 10 days in which to file a motion to ask me to set it aside....

And what your burden is on asking me to set it aside is to show me that you have a good and meritorious defense.

85 ("no willful pattern of disregard for the court's orders or rules"). In fact, Aakash's prompt response to the entry of the default judgment and its tender of a proposed answer indicate its good faith. *C.K.S. Engineers*, 726 F.2d at 1208.

Fourth, the record shows that Aakash had not been ignoring the litigation, although it was slow to secure replacement counsel. Following counsel's withdrawal it attempted to continue negotiations with Anilina. One of its officers appeared at the March 5 trial date. The court at that time sternly warned Aakash to obtain counsel to request a continuance, which it did. It was clear, as Anilina concedes, that the case would not be tried on March 17, yet when counsel appeared on that date, the court insisted that it was the "morning of trial." The order denying the Rule 60(b) motion similarly maintains that March 17 was the trial date and that the plaintiff and court were prepared to go forward at that time. The court specifically instructed counsel to show that Aakash had defenses to Anilina's claims in its motion to vacate the default, which counsel promptly did. Notwithstanding its earlier instructions, the court denied Aakash's motion without mentioning its defenses to Anilina's claims, relying instead solely on Aakash's failure to file an answer and be ready for trial on March 17. While Aakash may have been less than diligent in insuring that an answer was filed after its original attorney withdrew in January, this alone is not the type of carelessness which will preclude Rule 60(b) relief. *See, e.g., Passarella*, 810 F.2d at 677 (defendant's carelessness in not monitoring lawsuit does not preclude relief from default under Rule 60(b)).

As we have stated, there is no doubt that the court had at its disposal adequate, less drastic sanctions, including an assessment of attorneys' fees against Aakash in connection with the default proceedings. "A default judgment like a dismissal, is a harsh sanction which should usually be employed only in extreme situations, or when other less drastic sanctions have proven unavailing. [Citations]." *Ellingsworth*, 665 F.2d at 185, *quoted in North Central*, 842 F.2d at 167; *cf. Hal Commodities Cy-*

*cles*, 825 F.2d at 1139 (expressing preference for interim sanctions, but finding default judgment nonetheless warranted under facts of case). Although we are mindful of the district court's desire to maintain the integrity of its calendar, the facts here do not establish anything approximating the "extreme situations" contemplated in *Ellingsworth* and exemplified in *Hal Commodities Cycles*.

Of course, the failure to file an answer when due is a serious default. We have upheld refusals to vacate default judgments where a defendant has failed to file an answer. *See North Central; Chrysler Credit Corp.; Breuer.* As we have already explained, this case does not simply involve Aakash's failure to file an answer. In entering the default judgment and ruling on the Rule 60(b) motion, the court emphasized Aakash's purported failure to be prepared for trial on March 17 as meriting the default, notwithstanding its earlier acknowledgment that the trial would not take place on that date. Moreover, here the court completely failed to consider the meritorious defense Aakash attempted to establish at the court's specific request. *Compare Breuer*, 687 F.2d at 186 (noting weakness of defendant's showing of good cause and its failure to establish a meritorious defense); *Chrysler Credit*, 710 F.2d at 367 (finding failure to file an answer constituted willfulness and noting absence of good cause for the default); *North Central*, 842 F.2d at 167 (inadvertence in not filing answer is carelessness which does not justify relief under Rule 60(b)).

In view of the strongly worded dissent filed in this case, we have reexamined the majority opinion and are satisfied upon the facts of the particular case, which seem not to have been fully considered by the dissenter, that the result reached was the proper and appropriate one. Little purpose is served here by repeating the facts which caused us to come down on the side of favoring a trial on the merits over a default judgment. No case to our knowledge has indicated that that well-established principle has entirely been eroded.

Nevertheless, we feel some necessity not to disregard certain aspects of the dissent. The dissent observes that the majority opinion has found no case in which a default judgment entered in circumstances similar to those of this case was reversed. Of course, the dissent does not cite any case in which there was an affirmance of a default judgment entered in circumstances similar to those of this case. In his apparent zeal to relegate the appellate court to rubber stamping its approval where a district court has exercised its discretion in the default judgment situation, the dissenter seems to disregard one of the appellate problems in this situation, which arises from the fact that no case is exactly like any other case on the facts. We have endeavored, although apparently unsuccessfully in the eyes of the dissenter, to take up and consider carefully the various factual aspects of this case which cause us to hold that further proceedings in the district court are proper.

The dissenter states as a fact, not merely his opinion, that the majority decision will be resented by this circuit's district judges. We are not unmindful that no district judge is happy at being reversed, and presumably there is some kindred feeling when that occurs to one of the other district judges; nevertheless, we are skeptical that any great ground swell of resentment will occur on the part of any of our district judges who analyze just what did occur here. We paint no rosy picture of Aakash's conduct, or lack thereof, but Anilina contributed to the scenario that developed, as we have pointed out. Even the dissenter recognizes that some "judges would have given the defendant another chance; others would have imposed a sanction." Presumably those are some of "our judges."

We are interested in the dissenter's reference to Judge Getzendanner as one of the ablest district judges in this circuit. We do not question her capability even though the dissenter has found the necessity, in whole or in part, to reverse or otherwise remand cases in which she was the district judge and he wrote the opinion: *Dynamics Corp. of America v. CTS Corp.,* 805 F.2d 705 (7th Cir.1986); *Hunter v. Al-*

*lis–Chalmers Corp.,* 797 F.2d 1417 (7th Cir.1986); *Alliance to End Repression v. City of Chicago,* 742 F.2d 1007 (7th Cir. 1984) (en banc); *United States v. Janik,* 723 F.2d 537 (7th Cir.1983); *WGN Continental Broadcasting Co. v. United Video, Inc.,* 693 F.2d 622 (7th Cir.1982).

Nevertheless we are disturbed when a factor entering into an appellate decision is that of the capability of the trial judge. We have entertained the idea that in reviewing a decision on appeal, we should look at the facts and the judge's decision, rather than being influenced one way or the other by our subjective opinion of the judge's relative capability.

We do note, however, that although the motion to vacate was timely filed in March 1987, it was not overruled until September 2, 1987, the ruling at that time not adverting in any way to the merits of Aakash's defenses set forth in the motion to vacate. Twenty-eight days later, her previously announced resignation from the federal bench became effective. It takes no vivid imagination to envision that the judge was deeply embroiled in an effort to clean up her calendar, being as it must have been the heavy caseload each of our district judges bears. Be all this as it may be, we would remind the dissenter that one who runs a tight ship is one who exercises a firm command, not one who gives inconsistent commands.

We think it is necessary, in view of the dissenter's concern that failure to be ready for trial leaves a hole in the trial judge's calendar, to reemphasize that that was not the situation here. Judge Getzendanner made it quite clear that she never entertained the idea that the case would be tried on March 17. The judge did not think it would be tried, nor was the plaintiff prepared for trial.

Finally, the dissenter observes that disagreement between the trial court and the appellate court on a matter committed to the trial court's discretion is not a proper ground for reversal. This statement is certainly not a truism for it flies in the face of the fact that this court has never hesitated,

when it determined that a trial court had abused its discretion, to reverse the judgment. This is a disagreement between the appellate court and the trial court any way you look at it and this court has never abdicated from its duty to determine whether there has been on the record an abuse of discretion.

We conclude that the court abused its discretion in entering and refusing to set aside the default judgment. The judgment of the district court is VACATED and the cause is REMANDED for further proceedings.

POSNER, Circuit Judge, dissenting.

The district judge did not exceed her authority in granting a default judgment and then refusing to set it aside. In deciding otherwise, my brethren cross the line that separates the powers and responsibilities of an appellate court from those of a trial court. This decision will be resented by our district judges and is a setback to the cause of efficient judicial administration. The threat of default is one of the district judges' most important tools for obtaining compliance with litigation schedules. We blunt it by our decision today.

This is a routine commercial suit, filed in April 1986 by a Belgian company to collect the $18,000 purchase price of goods sold and delivered to the defendant but not paid for. Commercial suits in federal court for such modest amounts are rarely tried; generally, after some stalling, either they are settled or the defendant defaults. The defendant in this case did not file an answer when it was supposed to, and Judge Getzendanner gave it an extension to July 7. This was a generous extension (a defendant in federal court has only 20 days in which to answer the complaint), but no answer was filed on July 7. Judge Getzendanner could have entered a default judgment then and there, but instead she let this deadline pass without comment and, indeed, later gave the defendant until December 7 to answer. Another generous gesture—another deadline ignored. Meanwhile trial had been scheduled to begin on March 5, 1987. In January, Judge Getzendanner allowed the defendant's counsel to withdraw (the defendant had fired him) but stated that the March 5 trial date would stand. The defendant did not complain that it was being rushed unduly, yet when March 5, the day set for trial, rolled round, it had failed to obtain new counsel. Instead, an executive of the defendant appeared and pleaded for more time. There had been no forewarning, and the judge was properly dismayed. She gave the defendant till March 17 to persuade her not to hold it in default. Instead of filing anything—even the long overdue answer—newly appointed counsel for the defendant appeared before Judge Getzendanner on March 17 and asked her for a continuance. He had been hired the previous day, had not had time to review the file, and therefore was not prepared to offer reasons why his client should not be held in default. (The defendant, after almost a full year, still had not filed its answer.) This was too late, and Judge Getzendanner directed the entry of a default judgment, and having done so refused later to exercise her discretion under Fed.R.Civ.P. 60(b) to set it aside.

For a corporate litigant to show up in court on the day of trial and announce (without forewarning) that it cannot proceed because it has not retained counsel (a corporation cannot proceed pro se, of course) is inexcusable conduct that merits swift and sharp punishment up to and including the entry of a default judgment. If condoned, such conduct would make it impossible for our overburdened trial courts to manage their dockets. Having fired its old counsel in January, and knowing that trial was scheduled to begin on March 5, the defendant was obliged either to retain new counsel promptly or to advise the court promptly of its inability to do so. The defendant took neither course and as a result its appearance without counsel on March 5 came as a bolt from the blue. The defendant never has explained why it waited till March 16 to obtain new counsel.

Some judges would have given the defendant another chance; others would have imposed a sanction, but a lesser one than a default judgment (though since the entire stakes in this case are only $18,000, the

difference between a lesser sanction and the sanction of default might be slight). Judge Getzendanner, one of the ablest district judges in this circuit before her recent and much regretted resignation from the bench, ran a tight ship, and it was her prerogative to do so. She reacted to the defendant's shenanigans more harshly than some judges would have done; more harshly, obviously, than a majority of this panel would have done (or thinks it would have done); but she did not exceed the limits of her authority as a trial judge to manage her docket.

The question for this court is not whether we agree with what Judge Getzendanner did; it is whether she acted unreasonably. The blurring of this distinction is the fundamental flaw in the majority opinion. Cases that we are not free to ignore emphasize the breadth of the district court's discretion to use the default sanction as a device for preventing parties from disregarding orders essential to the management of the court's caseload. "[T]his court has moved away from the traditional position ... that [default] judgments are strongly disfavored. We are increasingly reluctant to reverse refusals to set them aside." *Dimmitt & Owens Financial, Inc. v. United States*, 787 F.2d 1186, 1192 (7th Cir.1987). "[T]he judge [in deciding whether to enter a default judgment and, if he has already entered it, whether to set it aside] is weighing imponderables—the burden on his docket (which is to say the inconvenience to other litigants), the disturbance of expectations legitimately created by the default judgment, and the inroads on the general and essential principle that litigation must end, on the one hand, and on the other hand the injustice of allowing the default judgment to stand, which in turn is a function of both the merits of the movant's substantive claims and the strength of his excuse for committing the default. With the standard of decision so multifaceted, the appellate court's ability to fault the district judge's application of the standard is quite limited, and the scope of effective judicial review is therefore slight." *Id.* at 1193. We can set aside the district judge's refusal to vacate a default

judgment only if "no reasonable person could agree with the district court's decision." *Tolliver v. Northrop Corp.*, 786 F.2d 316, 318 (7th Cir.1986). "Despite the harshness of the sanctions of dismissal or default, federal courts have consistently affirmed in the absence of a good excuse for the dilatory conduct." *Patterson v. Coca-Cola Bottling Co.*, 852 F.2d 280, 284 (7th Cir.1988).

I find no recognition of these principles in the majority's opinion in this case. Nor does that opinion cite any case in which a district judge was reversed for using the default sanction in circumstances similar to those of the present case. The failure to appear for trial on the day scheduled is a particularly serious default, because it leaves the judge with a hole in his trial calendar; if, instead of being dismissed, the case is rescheduled for trial, it will compete with other cases for the judge's limited trial time. A federal judge's civil trial time is especially tight, because of the pressures of the Speedy Trial Act, which governs criminal trials.

But while my brethren have not found a case in which a default judgment entered in circumstances similar to those of this case was reversed, it is easy, without even looking to any other circuit, to find cases where default judgments were affirmed even though the provocation was considerably less than in the present case. For example, in *Chrysler Credit Corp. v. Macino*, 710 F.2d 363, 367–68 (7th Cir.1983), we upheld —in an opinion written by a member of the majority in the present case—the district judge's refusal to vacate a default judgment that he had entered when, two months after the answer had been due, the defendant still had not filed it. In *Breuer Electric Mfg. Co. v. Toronado Systems of America, Inc.*, 687 F.2d 182 (7th Cir.1982), we upheld the refusal to vacate a default judgment in circumstances almost identical to those in *Macino*. Most remarkably, in *North Central Illinois Laborers' District Council v. S.J. Groves & Sons Co.*, 842 F.2d 164 (7th Cir.1988), we upheld a default judgment (and, again, a refusal to set it aside) entered only one or two days after the 20–day period for answering the com-

plaint had passed without the defendant's filing its answer. A month later, upon discovering the plaintiff's complaint (which had been mislaid in the defendant's offices), the defendant moved to set aside the default judgment—to no avail. The default was inadvertent rather than willful, yet we upheld the district court. Here we cannot even say that the default was inadvertent rather than willful, for the defendant has yet to explain its delay in retaining new counsel after it fired its original one. The defendant has not only failed to give "a good excuse for the dilatory conduct," *Patterson v. Coca–Cola Bottling Co., supra,* at 284; it has yet to indicate the cause of the dilatory conduct. In none of the cases I have cited did the default affect the district judge's trial calendar.

My brethren are not able to distinguish these cases. The observation in the majority opinion that "no case is exactly like any other case on the facts" is either a truism or a rejection of stare decisis. This case comes down to a disagreement between the trial court and the appellate court in a matter committed to the trial court's discretion, and such a disagreement is not a proper ground for reversal.